**Gary S. KIRK, Plaintiff–Appellant,**

v.

**FEDERAL PROPERTY MANAGEMENT CORPORATION and Weyerbacher Terrace, Defendants–Appellees.**

No. 92–2506.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1994.

Decided April 12, 1994.

---

Tracy E. Donner (argued), Keck, Mahin & Cate, Chicago, IL, for plaintiff-appellant.

Michael J. Cork, Indianapolis, IN (argued), for defendants-appellees.

Before BAUER, FLAUM, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* is not an insurance policy against unemployment for poor or insubordinate job performance. Rather, it prohibits discrimination in employment, as relevant here, on the basis of race. In this case, Gary Kirk, who is black, sued the Federal Property Management Corporation ("FPMC") and Weyerbacher Terrace for alleged violations of Title VII. Kirk claimed that the FPMC and Weyerbacher discriminated against him in his former job because of his race. The district court disagreed and granted summary judgment on all of Kirk's

claims in favor of the FPMC and Weyerbacher. Kirk appeals.

## I.

Weyerbacher Terrace is a residential apartment community managed by the FPMC. Kirk worked for Weyerbacher from October 29, 1980 to January 13, 1989 as a maintenance mechanic. Kirk's responsibilities included the maintenance and service of heating and cooling equipment as well as other general maintenance duties. In 1983 or 1984 (the record is unclear which is the correct year), Kirk began training other maintenance employees at the direction of his superiors. From 1985 to 1988, Kirk performed some of the duties of maintenance supervisor, although he was not placed in the position of maintenance supervisor. These duties included ordering and picking up parts, dealing with various contractors who came on the Weyerbacher premises, and training new maintenance employees. In February 1986 and again in January 1988, Kirk received generally favorable reviews from his supervisors, but was warned that he should become more serious about his job, improve his punctuality, and stop "horsing around." In 1988, Kirk asked the new Weyerbacher project manager if he would consider Kirk for the then-vacant position of maintenance supervisor.

On April 10, 1988, Kirk learned that the FPMC and Weyerbacher hired a white man, Tim Piotrzkowski, for the maintenance supervisor job. About a week later, Kirk expressed to the project manager his dissatisfaction with not getting the maintenance supervisor position. Kirk also announced that he would not train any other new employees. "I would resign before I'd do it again," he declared. In late August or early September of 1988, Piotrzkowski quit. He was replaced by another white person, Don Hawley. Kirk did not apply to replace Piotrzkowski.

During the course of his employment, Kirk was disciplined nine separate times under three different supervisors—four times in 1981, once in 1982, once in 1984, twice in 1988, and once in 1989. For example, on May 18, 1988, Kirk left his assigned work area during working hours without permission and was warned that any further violations of the FPMC Employee Manual would result in either Kirk's suspension or his discharge. Next, on December 23, 1988, Kirk's supervisors warned him again. This warning came after Kirk refused to obey an order by his superiors that related to Kirk's on-call duties. Still undeterred, Kirk falsified a work order only two weeks later, on January 6, 1989. The Employee Manual indicates that the penalty for falsifying company records, even for a first offense, is that the worker will be fired. Kirk's supervisors showed him the manual and Kirk acknowledged his offense by writing, "This is it! Get me the hell out of here!" Kirk's insubordinate activity with respect to this last incident was the straw that broke the camel's back. On January 13, 1989, the FPMC and Weyerbacher accommodated Kirk's wish and got him "the hell out of" there; they fired Kirk. Kirk admitted that he did not really want his job, but wanted the FPMC and Weyerbacher to fire him so that he could collect unemployment benefits that he would not receive if he quit.

A few weeks after losing his job, on February 6, 1989, Kirk filed a charge with the Equal Employment Opportunity Commission ("EEOC"). In the EEOC charge, filed as required pursuant to 42 U.S.C. § 2000e–5(e)(1), Kirk claimed that the FPMC and Weyerbacher discriminated against him because of his race when they passed him over for promotion to the position of maintenance supervisor and fired him.

On August 28, 1989, the EEOC issued a determination that the evidence obtained during the investigation of Kirk's charge did not establish a Title VII violation. Kirk responded by filing a request for review of the EEOC determination with the EEOC's Determinations Review Board. The Board affirmed. Kirk then filed this action in the district court. In his complaint, Kirk alleged that the FPMC and Weyerbacher discriminated against him because of his race when they twice passed him over for promotion to maintenance supervisor, hired two white men to fill that position, and did not offer him an educational opportunity that they offered to two white employees. The district court

granted summary judgment in favor of the FPMC and Weyerbacher.

## II.

■ We review the district court's decision to grant summary judgment *de novo*. *Vuka-dinovich v. Board of Sch. Trustees*, 978 F.2d 403, 408 (7th Cir.1992), *cert. denied*, — U.S. ——, 114 S.Ct. 133, 126 L.Ed.2d 97 (1993). We accept all facts and inferences in the light most favorable to Kirk as he is the non-moving party. *Id.* In Title VII cases, the courts take a critical look at efforts to withstand defendants' motions for summary judgment. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989). In this context, we examine the district court's decision as to whether the plaintiff would have had a fair chance of obtaining a verdict. *Id.* If not, the court properly granted the defendant's motion and dismissed the plaintiff's case. *Id.*

As relevant here, Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e–2(a)(1). Kirk claims that the FPMC and Weyerbacher treated him differently because of his race.

■ In this type of discrimination case, where the disparate treatment of a single employee is at issue, a plaintiff can either produce direct or indirect evidence of discrimination. Kirk opted for the latter. The indirect method involves the burden-shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ The indirect method of proving a disparate treatment discrimination claim begins with the plaintiff's prima facie case, which the plaintiff must prove by a preponderance of evidence. *Id.* at 252, 101 S.Ct. at 1093. To establish a prima facie case of discrimination, a plaintiff must show four things: (1) that the plaintiff belongs to a protected group; (2) that the plaintiff performed the job satisfactorily, applied for the new job, and was qualified for the new job; (3) that the plaintiff was rejected despite the plaintiff's qualifications; and (4) that the employer hired someone outside the protected group.[1] *Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6; *Hughes v. Derwinski*, 967 F.2d 1168, 1171 (7th Cir.1992); *Young v. Will County Dep't of Pub. Aid*, 882 F.2d 290, 293 (7th Cir.1989).

■ Once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093. The defendant's burden is to produce some legitimate nondiscriminatory reason for the challenged employment decision. *Id.* The explanation must be legally sufficient to justify a judgment in favor of the defendant. *Id.* at 255, 101 S.Ct. at 1094.

■ If the defendant produces the requisite legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to prove by a preponderance of evidence that the reasons offered by the defendant were a pretext for discrimination. *Id.* at 253, 101 S.Ct. at 1093. Of course, the ultimate burden of persuasion (not production) rests with the plaintiff at all times. *Id.* at 256, 101 S.Ct. at 1095. This burden-shifting analysis does not describe the order of proof at trial, if there is a trial, but is analytical only.

In this case, Kirk did not establish a prima facie case of discrimination. He also failed to come forward with any evidence to rebut the legitimate, nondiscriminatory reasons given by the FPMC and Weyerbacher for its deci-

---

1. The "protected group" concept originally referred only to racial minorities. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Title VII, as the courts have recognized, prohibits discrimination against anyone of *any* race "because of such individual's race [or] color." 42

U.S.C. § 2000e–2(a). *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2579, 49 L.Ed.2d 493 (1976) (Title VII prohibits racial discrimination against whites upon the same standards as are applicable to blacks).

sion to hire individuals other than Kirk for the supervisor position.

 We begin with Kirk's failure to establish a prima facie case. The record reveals that he was told to become more serious about his job, improve his punctuality, and stop horsing around. Kirk was also disciplined numerous times—at least nine—and was warned repeatedly that another violation could result in his dismissal. The record thus reveals that Kirk was not performing. his job satisfactorily.

 Even if Kirk established a prima facie case, he failed to rebut the legitimate nondiscriminatory reasons given by the FPMC and Weyerbacher. The FPMC and Weyerbacher explained to the EEOC that they hired Tim Piotrzkowski because he possessed more than six years of prior experience as a maintenance supervisor as well as three years prior experience as an electrical contractor. Kirk offers nothing to rebut this reason. The record indicates that the FPMC and Weyerbacher hired a person who was exceptionally well qualified for the job. Their decision to hire Piotrzkowski was a business decision based upon information then available with respect to Kirk, Piotrzkowski, and, presumably, other applicants. Title VII certainly allows employers to hire anyone they want, so long as they do not discriminate against anyone because of certain statutorily enumerated categories like race or color. There are no facts in this record that even hint that the FPMC and Weyerbacher discriminated against Kirk because of his race or color.

 Kirk raises one other claim—that the FPMC and Weyerbacher discriminated against him because of his race when they did not provide him with educational opportunities that were available to two white employees. Kirk did not raise this issue in his EEOC charge. Instead, Kirk first complained about this alleged educational discrepancy in the complaint he filed with the district court. By doing so, Kirk violated the rule that allegations that are not included in an EEOC charge cannot be contained in a subsequent complaint filed in the district court. *Weiss v. Coca-Cola Bottling Co.*, 990

F.2d 333, 337 (7th Cir.1993). Kirk counters by arguing that his educational discrepancy claim relates to and arises out of his EEOC charge of failure to promote. The caselaw in this area shows otherwise. *See, e.g., Oxman v. WLS–TV*, 12 F.3d 652 (7th Cir.1993) (failure to rehire claim not reasonably related to original termination claim); *Weiss*, 990 F.2d at 337 (job transfer claim did not reasonably grow out of gender discrimination charge); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989) (plaintiff barred from raising racial harassment claim under Title VII after plaintiff failed to mention it in his administrative charge).

Kirk raises other issues equally without merit. They do not warrant discussion. There is simply no evidence of discrimination here. The district court's decision to grant summary judgment to the FPMC and Weyerbacher is

AFFIRMED.