Cathy M. YOUNG, et al., Plaintiffs,

v.

EASTER ENTERPRISES, INC. d/b/a Great Scot Supermarkets, and Buehler Foods, Inc., d/b/a Buehler's Buy–Low, Defendants.

No. EV 94–127–C.

United States District Court, S.D. Indiana, Evansville Division.

Nov. 29, 1995.

Michael C Kendall, W. Russell Sipes, Kelli R. Keller, Kendall Law Office, Indianapolis, IN, for Plaintiffs.

James P. Casey, Bowers Harrison Kent & Miller, Evansville, IN, Robert C. Thomson, Mark W. Thomas, Grefe & Sidney, Des Moines, IA, for Easter Enterprises, Inc.

Wm. Michael Schiff, Mary Lee Franke, Ziemer Stayman Weitzel & Shoulders, Evansville, IN, for Buehler's Foods, Inc.

### *MEMORANDUM*

BROOKS, District Judge.

This Matter is before the Court on the **Defendant Easter Enterprises, Inc.'s Motion to Dismiss and in the Alternative for Summary Judgment** and **Defendant Easter Enterprises, Inc.'s Brief in Support of Motion to Dismiss** filed September 19, 1994. The Plaintiffs' **Answer Brief in Response to Defendant Easter Enterprises, Inc.'s Motion to Dismiss and in the Alternative for Summary Judgment** was filed January 9, 1995. The Plaintiffs' **Supplemental Authorities to Plaintiffs' Answer Brief in Response to Defendant Easter Enterprises, Inc.'s Motion to Dismiss, and in the Alternative, for Summary Judgment** was filed January 17, 1995. The **Defendant Easter Enterprises, Inc.'s Reply Brief** was filed February 24, 1995.

This Matter is also before the Court on the **Defendant's [Buehler Foods, Inc. d/b/a Buehler's Buy–Low] Motion to Dismiss or in the Alternative, Motion for Summary Judgment** and **Buehler Foods' Brief in Support of Motion to Dismiss or in the Alternative, Motion for Summary Judg-**ment filed January 30, 1995. The **Plaintiffs' Response to Defendant's Motion to Dismiss and/or Motion for Summary Judgment, Answer Brief in Response to Defendant Buehler's Foods, Inc.'s Motion to Dismiss and in the Alternative for Summary Judgment** and **Material Facts in Dispute** were filed June 8, 1995. In the **Magistrate Judge's Order on Telephone Status Conference** issued May 26, 1995, Magistrate Hussman ordered that the "Plaintiffs shall file any supplemental briefs in response to the Defendant's motion to Dismiss or in the Alternative, Motion for Summary Judgment filed by defendant Buehler Foods, Inc. d/b/a Buehler's Buy–Low, on January 31, 1995, by not later than fifteen (15) days after the receipt of the responses to the discovery served May 12, 1995." (Order of May 26, 1995 ¶ 1).

The Plaintiffs have not filed any supplemental briefs in this Matter.

### *Statement of Relevant Facts*

This action was brought by 122 individuals who were employed by the Defendant Easter Enterprises, Inc. d/b/a Great Scot Supermarkets ("Easter") at its grocery stores in Evansville, Indiana. (Complaint ¶ 6). Fifty-two of the Plaintiffs are over the age of 40 ("older employees"). (Complaint ¶ 6; Complaint Ex. A; Easter Aff. ¶ 19). Seventy of the Plaintiffs are under the age of 40 ("younger employees"). (Complaint ¶ 7; Complaint Ex. B; Easter Aff. ¶ 20). One Plaintiff, Maurine Mattingly, is alleged to be "handicapped." (Complaint ¶ 8). On or about September 13, 1993, the Defendant Easter closed the stores which it operated in Evansville. (Complaint ¶¶ 6, 15).

At the time that the Defendant Easter ceased its operations, there was in effect a Collective Bargaining Agreement ("CBA") governing the terms and conditions of employment between the Defendant Easter and the Plaintiffs' collective bargaining representative, United Food & Commercial Workers District Union Local 700 ("Union"). (Complaint ¶ 12).

The Defendant Easter's termination of its Evansville operations resulted from a determination by the Defendant Easter's share-

holders to terminate its retail grocery store operations in December, 1992. (Easter Aff. ¶ 3). Easter employed a business broker to assist in finding a purchaser for the assets of its retail grocery stores. (Easter Aff. ¶ 3). The Evansville stores were purchased by the Defendant Easter from Super Valu Stores, Inc. in November, 1984. (Easter Aff. ¶ 5). In connection with this sale, Super Valu retained a "right of first refusal" should the Defendant Easter receive an offer to purchase the Evansville stores. (Easter Aff. ¶ 5). After the Defendant Easter received an offer to purchase the stores from Schnuck's Markets, Inc. on June 8, 1993, Defendant Easter notified Super Valu of the offer for the purchase of the assets of its Evansville stores. (Easter Aff. ¶¶ 7–8). The Defendant Buehler Foods, Inc. d/b/a Buehler's Buy–Low ("Buehler") received an assignment of the right of first refusal from Super Valu, and notified the Defendant Easter on July 6, 1993 that it intended to exercise this right by purchasing the assets and properties of Easter located in Evansville. (Easter Aff. ¶ 9). The Defendants Easter and Buehler thereafter negotiated the terms by which the purchase would be consummated. (Easter Aff. ¶ 9).

On July 14, 1993, all of the employees working in the Evansville stores received a "Worker Adjustment and Retraining Notification" form ("WARN") including a "Notice of Closing" with their pay checks. (Easter Aff. ¶ 11). A copy of this notice was also sent the Union on July 14, 1993. (Easter Aff. ¶ 12). This notice informed the employees that all of the Evansville stores would be permanently closed by the Defendant Easter, and their employment with Easter would be terminated. (Easter Aff. ¶ 11, Defendant Easter Enterprises, Inc. Statement of Material Facts Ex. B). On July 27, 1993, the Defendant Easter received a letter from the Union requesting bargaining over the effects of the closing. (Easter Aff. ¶ 12). On July 27, 1993, the Defendant Easter sent a "Notice of Intent to Terminate" the Great Scot Supermarket Pension Plan. (Easter Aff. ¶ 12). At the end of July, 1993, Buehler received permission from Easter to post a notice in the Evansville stores advising all Easter employees that Buehler was hiring employees for "its stores" and a notice advising applicants of some terms and conditions of employment with Buehler. (Clesi Aff. ¶ 3).

On August 27, 1993, a memorandum regarding the settlement of grievances between the Union and the Defendant Easter was issued. (Plaintiffs' Answer Brief in Response to Defendant Easter Enterprises Inc.'s Motion to Dismiss or in the Alternative for Summary Judgment Ex. 1 (hereinafter "Plaintiffs' Easter Answer Brief").

The Defendant Easter and the employees' Union submitted a dispute regarding the closing of the Evansville stores and whether Easter was in violation of the CBA for not binding the Defendant Buehler to the CBA to arbitration pursuant to the CBA. (Easter Aff. ¶ 15). The arbitration hearing was held on October 5, 1993, and Arbitrator Elliott H. Goldstein issued his Opinion and Award on November 1, 1993 denying the Union's grievance in its entirety. (Easter Aff. ¶ 17–18; Plaintiff's Designation of Documents Relied on in Plaintiffs' Response in Opposition Ex. 2 (hereinafter "Arbitrator's Decision at p. ___")).

All of the older employees who are Plaintiffs in this action filed charges of age discrimination against the Defendants Easter and Buehler with the Equal Employment Opportunity Commission ("EEOC") dated February 22, 1994. (Plaintiffs' Easter Answer Brief Ex. 2). All of the younger employees who are Plaintiffs in this action attempted to file charges of age discrimination against the Defendants Easter and Buehler dated February 22, 1994. (Plaintiffs' Easter Answer Brief Ex. 2). The EEOC refused these charges as failing to state a claim. (Plaintiffs' Easter Answer Brief Ex. 3).

### Discussion

This Court has jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1331 as the Plaintiffs' present claims arise under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1132, and the Equal Opportunity

for Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*.

## I. Treatment of Present Motions

Although the Defendants filed the motions presently under consideration as motions to dismiss pursuant to Federal Rule of Civil Procedure 12, the Court will consider the motions as motions for summary judgment brought under Federal Rule of Civil Procedure 56.

■ When a party files a motion to dismiss pursuant to Rule 12(b)(6), the court may be presented with matters outside the pleadings to support such a motion. When this occurs, however, Rule 12(b) directs that if those matters are not excluded "the motion shall be treated as as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R.Civ.P. 12(b). *Fleischfresser v. Directors of School District 200,* 15 F.3d 680, 684–85 (7th Cir.1994); *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988). The Court must give the nonmovant notice of its intent to convert the motion, and a dismissal without notice to the parties of conversion, or alternatively, failure to exclude material outside of the pleadings in the decision-making process, may constitute reversible error. *Matter of Wade,* 969 F.2d 241, 249 (7th Cir.1992).

In the present matter, all parties have presented evidence outside the pleadings in support of their positions, and the nonmovant Plaintiffs specifically argue that the Defendants motions should be treated as motions for summary judgment. As a result, the Court will treat the motions as having been brought pursuant to Federal Rule of Civil Procedure 56.

## II. Summary Judgment Standard

■ Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Before the movant is entitled to summary judgment he must carry the burden of establishing that there is no existing genuine issue of material fact. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 473 (7th Cir.1988). After the moving party has met this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (emphasis original); *see also McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir.1989) ("A party faced with a motion for summary judgment who beats the burden of proof on a particular issue may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact for trial"). A material question of fact is a question which will be outcome determinative. *Wainwright Bank v. Railroadmens Federal Savings,* 806 F.2d 146 (7th Cir.1986).

■ Finally, while discrimination cases are rarely resolved through summary judgment, it is well settled that conclusory allegations of discrimination do not render summary judgment inappropriate. *See Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572–73 (7th Cir.1989) (summary judgment is appropriate where record reveals plaintiff would not have fair chance of obtaining a verdict); *Friedel v. City of Madison,* 832 F.2d 965, 972 (7th Cir.1987) (where plaintiff sets forth no indications of motive and intent supportive of his position summary judgment is appropriate); *Powers v. Dole,* 782 F.2d 689, 695 (7th Cir.1986) (same). Summary judgment is only appropriate when the "record taken as a whole could not lead a trier of fact to find for the nonmoving party, [and] there is no genuine issue for trial." *Wainwright,* 806 F.2d at 149 (internal quotation omitted).

## III. Impact of the Arbitration Decision on Present Disputes

Before reaching the merits of the Plaintiffs' claims and the Defendants' present motions, the Court must consider the effects of

Arbitrator Goldstein's Opinion and Award issued November 1, 1993 which resulted from a grievance filed by the Plaintiffs' Union.

Although the Plaintiffs do not bring this action claiming that the award of the arbitrator should be vacated, the Defendants both contend that Arbitrator Goldstein's Opinion and Award is binding upon the Plaintiffs' in the present dispute. Although the issue is only marginally related to the Defendant Easter's defenses, it has a great bearing upon the Defendant Buehler, for the Plaintiffs' claims essentially *assume* that the Defendant Buehler had some obligation to hire or accept the transfer of the Plaintiffs from Easter's employment when they purchased the business.

The extent of the courts' broad deference to arbitration awards is well established, as recently expressed by the Court of Appeals for this Circuit:

> The limited scope of judicial review of arbitration awards is well settled. The Supreme Court has reiterated this longstanding principle: To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject the award on the ground that the arbitrator misread the contract. *[United] Paperworkers v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). An "arbitrator's award settling a dispute must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.* However, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court cannot overturn an arbitration award. *Id.*

*Sullivan v. Lemoncello,* 36 F.3d 676, 682–83 (7th Cir.1994).

■ Furthermore, the courts will "resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award," *Polk Bros. v. Chicago Truck Drivers Union,* 973 F.2d 593, 596 (7th Cir. 1992); *see also, Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180 (7th Cir. 1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986), and " '[i]t is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract' that the award can be said not to draw its essence from the collective bargaining agreement." *Sullivan,* 36 F.3d at 683 (citing *Ethyl Corp.,* 768 F.2d at 184–85) (emphasis in original).

The issue decided by Arbitrator Goldstein in this matter involved Article 16 of the CBA, which provides in pertinent part:

> *Successors and Assigns.* This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assignees, whether by merger, consolidation or otherwise. In the event that the Employer's entire operation or any part thereof, is sold, leased, transferred, or in bankruptcy proceeding, such operation shall continue to be subject to the terms and conditions of this Agreement for the life hereof.... The Employer shall give notice of the existence of this Agreement to any purchasers, transferee, lessee, and assignee, etc., of the enterprise covered by this Agreement or any part thereof.

CBA Article 16.

Finding that "the established "legal" meaning of successorship ... must be deemed to have been incorporated into the labor contract [and] Buehler cannot be considered a successor to" Easter, Arbitrator Goldstein held that Easter was not obligated to bind Buehler to the terms and conditions of the CBA and, accordingly, denied the grievance in its entirety. (Arbitrator's Decision at p. 38).

■ Prior arbitration decisions are not entirely preclusive in a subsequent ADEA action by an employee. *Johnson v. University of Wisconsin–Milwaukee,* 783 F.2d 59, 62 (7th Cir.1986); *see also, Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 59–60, 94 S.Ct.

1011, 39 L.Ed.2d 147 (1974) (Title VII); *Darden v. Illinois Bell Telephone, Co.*, 797 F.2d 497, 504 (7th Cir.1986) (Title VII). This is primarily because "arbitral fact-finding is not equivalent to judicial fact-finding" and "the arbitrator's authority derives solely from contract so that he has no general authority to invoke public laws that conflict with" a CBA. *Johnson*, 783 F.2d at 62.

■ In the present matter, Arbitrator Goldstein did not consider whether the Plaintiffs' termination from Easter's employment, or Buehler's refusal to hire the Plaintiffs, was motivated by a discriminatory intent. Likewise, he did not consider whether any party's acts were violative of the ADEA, ERISA, or any other public laws. As a result, his award and opinion cannot be considered as preclusive of these particular claims.

However, some of the Plaintiffs' claims rest upon the presumption that the Defendant Buehler was required by the CBA to allow the Plaintiffs' employment to transfer when they purchased Easter's Evansville stores. In other words, the Plaintiffs' *presume* that they were already employed by Buehler when arguing that they were unjustly discharged.

The Court cannot make such a presumption, for Arbitrator Goldstein found that the CBA did *not* require Easter to bind Buehler to the CBA, and the Court sees no reason not to give this decision its due weight. Of course, the Arbitrator's decision does not have any preclusive effect on the issues of whether the Plaintiffs were terminated from Easter's employment because of their age, and has no bearing upon the issue of whether Buehler refused to hire the Plaintiffs because of their age. Because neither party argues that the Arbitrator exceeded his authority, or that his decision does not draw its essence from the CBA, however, his decision is preclusive insofar as he held that Easter had no obligation to force Buehler to accept Easter's employees as Buehler's in connection with the transfer of the stores' ownership.

*IV. "Older Employees'" ADEA Claims Against Easter*

Turning to the Defendants' present motions, the Defendant Easter first moves for summary judgment on the contention that the Plaintiffs failed to file timely charges with the EEOC under 29 U.S.C. § 626.

The parties agree that in Indiana a charge of discrimination must be filed with the appropriate authority within 180 days of the discrimination to meet the requirements of the applicable statute of limitations. (Defendant Easter Enterprises, Inc.'s Brief in Support of Motion to Dismiss at p. 11 (hereinafter "Defendant Easter's Brief at p. __"); Plaintiffs' Easter Answer Brief at pp. 8, 10); *see*, 29 U.S.C. § 626(d)(1); *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 410 (7th Cir.1984)

■ Thus, the issue presently in dispute is when this 180-day period began to run. It is well-established that "[a] plaintiff's action [under the ADEA] accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir.1995); *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir.1994); *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279, 281 (7th Cir.1993). Thus, a plaintiff's time begins to run "when the employer communicates an adverse employment decision to the employee, not when the full consequences of that action are felt." *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 847 (7th Cir.1992), *see also, Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990), *reh'g denied, cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). Although the issue of when a cause of action accrues is somewhat fact-sensitive, where the relevant facts are undisputed and they lead to only one possible conclusion, the issue may be determined as a matter of law. *Horn v. A.O. Smith Corp.*, 50 F.3d 1365 (7th Cir.1995). *Kedzierski v. Kedzierski*, 899 F.2d 681, 683 (7th Cir.1990).

■ In the present matter, it is undisputed that the Plaintiffs each received a copy of the WARN notice on July 14, 1993, which stated that all Great Scot stores in Evansville owned by Easter "are to be closed permanently," and that "[a]ll employees will be

separated from their employment with Easter" on September 14, 1993. (Defendant Easter Enterprises, Inc. Statement of Material Facts Ex. B). Furthermore, it is undisputed that a copy of this notice was sent the Union on July 14, 1993. (Easter Aff. ¶ 12). On July 27, 1993, the Defendant Easter received a letter from the Union requesting bargaining over the effects of the closing. (Easter Aff. ¶ 12). On July 27, 1993, the Defendant Easter sent a "Notice of Intent to Terminate" the Great Scot Supermarket Pension Plan. (Easter Aff. ¶ 12). At the end of July, 1993, Buehler received permission from Easter to post a notice in the Evansville stores advising all Easter employees that Buehler was hiring employees for "its stores" and a notice advising applicants of some terms and conditions of employment with Buehler. (Clesi Aff. ¶ 3). On August 27, 1993, a memorandum regarding the settlement of grievances between the Union and the Defendant Easter was issued. (Plaintiffs' Easter Answer Brief Ex. 1).

It is on this latter date that the Plaintiffs hang their hat: They claim that it was not until August 27 that they realized that they would suffer any adverse employment action. It is undisputed, however, that on July 14 the Plaintiffs received the notice that "[a]ll employees will be separated from their employment with Easter" on September 14, 1993. (Defendant Easter Enterprises, Inc. Statement of Material Facts Ex. B). This informed them in unequivocable terms that their employment with Easter would be ending, and told them the exact date on which their employment would terminate. Although the Plaintiffs may have *believed* that the Defendant Buehler would "transfer" them as employees when it reopened the stores, this does not counter the fact that the Plaintiffs were made aware on July 17 that their employment with Easter would end.

Even assuming that the Plaintiffs were of the opinion that the Defendant Buehler would automatically assume the employer's position and that, as a result, they would suffer no adverse employment action, this notion should have been dispelled at the latest by the "end of July," when Buehler posted its notices that the soon-to-be former

employees of Easter could apply for employment with Buehler. Even if the Court were to hold that it was not until this late date that the Plaintiffs' cause of action accrued, their EEOC charges remain untimely.

Finally, the Plaintiffs argue that because they assumed that the Defendant Buehler would employ them upon the transfer of ownership, the Court should equitably toll the statute of limitations in this case.

 Because the filing of an administrative charge under the ADEA is not a jurisdictional requirement, but a "condition precedent" to filing a civil case in federal court, the requirement may be subject to equitable modifications. *Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 605 (7th Cir.1992), *cert. denied*, 506 U.S. 916, 113 S.Ct. 324, 121 L.Ed.2d 244. Two such kinds of modification are applicable to the ADEA's filing requirement: Equitable estoppel and equitable tolling. The former applies where the "defendant takes active steps to prevent the plaintiff from suing in time." *Thelen*, 64 F.3d at 267; *Cada*, 920 F.2d at 450. The Plaintiffs do not allege that Easter took any type of affirmative actions to prevent them from filing their charges in a timely manner after the July 14 notice. As a result, the doctrine of estoppel has no application in this matter.

 Equitable tolling applies in cases where "despite due diligence, [the plaintiff] is unable to obtain enough information to conclude that he may have a discrimination claim." *Thelen*, 64 F.3d at 267; *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir.1994); *Cada*, 920 F.2d at 451. Equitable tolling does not forestall a plaintiff's requirement to file indefinitely or until he is *certain* that discrimination has occurred, however, but only until "a reasonable person would believe he *may* have cause of action." *Thelen*, 64 F.3d at 267.

 The only conduct on the part of Easter complained of by the Plaintiffs in their request for the Court to toll the filing requirement in this matter is that "Easter kept silent, allowing the [Plaintiffs] to tacitly believe that the CBA Successor clause functioned as a conduit to protect their employ-

ment throughout the sale." (Supplemental Authorities to Plaintiffs' Answer Brief in Response to Defendant Easter Enterprises, Inc.'s Motion to Dismiss, and in the Alternative, for Summary Judgment at p. 8). The facts belie this argument. The July 14 notice to the Plaintiffs clearly stated that their employment with Easter would be terminated. Furthermore, by a letter dated July 28, 1993, the Union grieved the fact that Easter would not bind Buehler to the Successor clause. (Arbitrator's Decision at pp. 11–12). This, when coupled with the fact that Buehler was posting notices that it would accept applications for employment from Easter employees in late July should have put the Plaintiffs on notice that Easter was not planning to bind Buehler to any type of succession clause contained in the CBA. In short, the Defendant Easter did *not* remain silent and allow the Plaintiffs to assume that they would remain employed, but affirmatively took steps to explicitly notify them that they would soon be losing their positions.

Finally, the Court can see no inequity in refusing to toll the time limits for the Plaintiffs' filing of their charges in this case. Even if the Plaintiffs did not realize that they would not automatically become employees of Buehler after the sale of the stores, they did not execute their charges of discrimination until February 22, 1994, despite becoming aware of their plight—by their own contention—in August, 1993.

As a result of the finding that the Plaintiffs were informed of the Defendant Easter's decision to terminate their employment on July 14, 1993 and that equitable considerations do not warrant the tolling of the 180–day filing requirement, the Court must find that the Plaintiffs' charges executed February 22, 1994 were untimely under 29 U.S.C. § 626.

Furthermore, even if the Court were to find that the Plaintiffs filed timely charges of discrimination, the Plaintiffs have failed in their burden of presenting a *prima facie* claim of discrimination under the ADEA.

■■■ The ADEA makes it unlawful "for an employer ... to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). A plaintiff alleging discrimination must show that he has been the victim of intentional discrimination. *Friedel v. City of Madison,* 832 F.2d 965, 971–72 (7th Cir.1987). This can be done either by offering direct evidence of discrimination, *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or by indirect evidence through the burden shifting method recognized in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Chambers v. American Trans Air, Inc.,* 17 F.3d 998 (7th Cir.1994), *reh'g. and suggestion for reh'g. en banc denied; Hong v. Children's Memorial Hospital,* 993 F.2d 1257 (7th Cir.1993), *reh'g. denied, cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48, *reh'g denied,* —— U.S. ——, 114 S.Ct. 2695, 129 L.Ed.2d 826 (1994). Where one does not offer direct proof of discrimination, his claim must be addressed under the burden-shifting method. *See Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333 (7th Cir.1993).

■■■ Under the *McDonnell Douglas* standard the plaintiff first has the burden to set forth a *prima facie* case of discrimination. Once the plaintiff meets that burden, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If defendant meets that burden, the presumption of discrimination is dissolved. The burden then shifts back to the plaintiff to show that Defendant's actions were a mere pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–03, 93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668 (1973); *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 138 (7th Cir.1994); *Samuelson v. Durkee/French/Airwick,* 976 F.2d 1111, 1113–14 (7th Cir.1992). The ultimate burden of persuasion rests with the plaintiff at all times. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Kirk,* 22 F.3d at 138.

■ Although *McDonnell Douglas* was decided under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, this same burden-shifting analysis is applicable to the Plaintiffs' ADEA claims. *Rand v. CF Industries, Inc.*, 42 F.3d 1139 (7th Cir.1994); *Equal Employment Opportunity Comm'n v. G–K–G, Inc.*, 39 F.3d 740 (7th Cir.1994); *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159 (7th Cir.1994); *Oxman v. WLS–TV*, 12 F.3d 652 (7th Cir.1993). For a *prima facie* ADEA case, the Plaintiffs must show that (1) they fell within the protected class of persons; (2) they were meeting the employer's legitimate expectations; (3) they were discharged or demoted; and (4) *younger* employees were treated more favorably. *Robinson*, 23 F.3d at 1162 (citing *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 (7th Cir.1992) (emphasis added); *Shager v. Upjohn Co.*, 913 F.2d 398, 400–01 (7th Cir.1990); *Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988)).

■ Although it is undisputed in this case that some of the Plaintiffs were within the class of persons protected by the ADEA, the Plaintiffs have presented nothing from which a reasonable trier of fact could conclude that younger employees were treated more favorably than the protected employees in this case. Although it is alleged in the Complaint that the Easter workforce was replaced by younger employees, the Plaintiffs have presented nothing to substantiate this blanket assertion and nothing from which a trier of fact could infer that discrimination was the cause of the employees' termination. As a result, the older employees have failed to present a valid *prima facie* case of discrimination, and summary judgment is warranted.

After considering the foregoing, the Court hereby **GRANTS IN PART** the **Defendant Easter Enterprises, Inc.'s Motion to Dismiss and In the Alternative for Summary Judgment** as to Count 1 of the Plaintiffs' Complaint.

**V. "Older Employees'" ADEA Claims Against Buehler**

The Defendant Buehler moves the Court to dismiss Count 1 of the Plaintiffs' Complaint against it because the Plaintiffs have failed to show a "pattern or practice" of age discrimination by Buehler. The Plaintiffs, on the other hand, argue that they have presented a *prima facie* case of discriminatory discharge against Buehler.

As discussed above, the Plaintiffs' argument is not applicable to the case at bar, as Buehler was not obligated to automatically accept Easter's employees as employees of Buehler. In other words, the legal analysis applied by the Plaintiffs assumes that they were already employed by Buehler.

■ Rather than make this assumption, the Court will treat the Defendant Buehler's actions as a failure to hire allegedly based upon age discrimination. Under this standard, a plaintiff must demonstrate "(1) that he was a member of the protected class; (2) that he applied and was qualified for a position for which the [employer] was seeking applicants; (3) that he was rejected; and (4) that the employer hired instead a younger person." *Caldwell v. National Ass'n of Home Builders*, 771 F.2d 1051, 1056 n. 2 (7th Cir.1985); *see also, Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 153–54 (7th Cir.1994).

■ Neither party disputes that some of the Plaintiffs are over the age of forty, and thus within the protected class, that some of them applied for positions for which Buehler was seeking applications, and that some of the Plaintiffs did not receive employment offers with Buehler[1].

The Plaintiffs have failed to present a valid *prima facie* case of age discrimination, however, as they have submitted no evidence from which any fact-finder could conclude that younger workers were hired instead of or treated more favorably by Buehler than the Plaintiffs. Rather, the Plaintiffs' case

**1.** The Defendant Buehler has presented competent evidence that some of the Plaintiffs alleging age discrimination were in fact hired by Buehler. Although these Plaintiffs clearly have failed to present a *prima facie* case, because all Plaintiffs have failed to present a *prima facie* case for other reasons the Court sees no need to rule on this issue or differentiate between the various Plaintiffs at the present time.

stands only upon the Complaint filed in this action, wherein they allege that they were not hired, or were replaced by, a younger workforce because of the increased cost of providing health care and pension benefits to older workers. (Complaint ¶ 17). As noted above, however, when faced with summary judgment, the mere allegations of the Complaint are not enough to support the *prima facie* case.

Faced with this total lack of any evidence showing the existence of a *prima facie* case of age discrimination by the Defendant Buehler, as well as a lack of any evidence showing that Buehler engaged in a pattern or practice of age discrimination, the Court hereby **GRANTS IN PART** the **Defendant's [Buehler Foods, Inc. d/b/a Buehler's Buy–Low] motion to Dismiss or in the Alternative, Motion for Summary Judgment.**

### VI. "Younger Employees" ADEA Claims

Both Defendants also contend that the "younger employees"—those under forty years of age—have failed to state a claim under the ADEA.

Even disregarding the fact that the younger employees did not file adequate charges with the EEOC, the younger employees cannot state a claim under the ADEA.

The "protected class" under the ADEA is limited to those persons aged 40 and over. 29 U.S.C. § 631; *Guardian Industries Corp v. N.L.R.B.*, 49 F.3d 317, 319 (7th Cir.1995) ("age discrimination means treating persons 40 and over differently"); *Futrell v. J.I. Case*, 38 F.3d 342, 345 (7th Cir.1994) ("[t]o show age discrimination ... the employee must demonstrate" (1) that "he was over forty"); *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1162 (7th Cir.1994) (The plaintiff "must show that (1) he fell within the protected class of persons between the ages of 40 and 70").

As a result, the younger employees in this case cannot state a claim of age discrimination under the ADEA.

The Plaintiffs choose to argue another claim: They contend that the younger employees were retaliated against for protesting the alleged discrimination against the older employees.

In addition to the prohibition against discrimination on the basis of one's age, the ADEA makes it unlawful for "an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section." 29 U.S.C. § 623.

■ To establish a prima facie case of retaliation, a plaintiff must show that: 1) he engaged in a protected activity under the ADEA; 2) he suffered an adverse employment action subsequent to his participation; and 3) there exists a causal connection between the adverse employment action and the participation in protected activity. *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995); *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir.1994).

■ Even if the younger employees have standing to bring a retaliation claim[2], and the Court ignores the fact that no charge of retaliation has ever been filed by any of the Plaintiffs in this action, the younger employees have failed to present any evidence that they engaged in any protected activity on behalf of their older coworkers. Furthermore, all of the evidence before the Court shows that Easter's decision to terminate the employees was made sometime prior to July 14, 1993, when the decision was communicated to the employees. Thus, even if the Court could find that the younger employees' attempt to file EEOC charges was protected activity, the employees suffered no adverse employment action at the hands of Easter subsequent to their participation in the protected activity. Finally, there is no evidence

---

**2.** Although courts have held that persons under the age of 40 may bring claims arising under the ADEA, *Allen v. American Home Foods, Inc.*, 644 F.Supp. 1553, 1558 (N.D.Ind.1986), *Anderson v. Phillips Petroleum Co.*, 722 F.Supp. 668, 671–72 (D.Kan.1989), *Johnson v. Mayor and City Council of Baltimore*, 515 F.Supp. 1287, 1301 (D.Md. 1981), *rev'd on other grounds*, 731 F.2d 209 (4th Cir.1984), these holdings appear to ignore the plain language of the ADEA, which expressly states that "[t]he prohibitions in this Act shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

before the Court which could be inferred to establish any type of causal connection between any alleged protected activity and Easter's decision to terminate or Buehler's decision not to hire the younger employees.

After considering the foregoing, the Court hereby **GRANTS IN PART** the **Defendant Easter Enterprises, Inc.'s Motion to Dismiss and In the Alternative for Summary Judgment** and **GRANTS IN PART** the **Defendant's [Buehler Foods, Inc. d/b/a Buehler's Buy–Low] Motion to Dismiss or in the Alternative, Motion for Summary Judgment** as to Count 2 of the Plaintiffs' Complaint.

## VII. ERISA Claim

Easter and Buehler also move the Court to dismiss Count Three of the Plaintiffs' Complaint, which attempts to state a claim arising under ERISA by claiming that Easter and Buehler acted "in consort" to close the stores "interfere with the full attainment of the rights of the Younger, Older and Handicapped Employees under their qualified employee benefit plan." (Complaint ¶ 29). In support of its motion, Easter contends that (1) Because the "rights" of the employees were created by the CBA, the employees' claims are barred for failure to follow the procedure for the resolution of grievances provided for in the CBA; (2) The dispute regarding the plan is preempted by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("Section 301"); and, (3) The Plaintiffs' have failed to state a valid claim under ERISA.

■■■ In disputing the Defendant's contention that the Plaintiffs' were required to follow the grievance and arbitration clauses of the CBA before bringing their ERISA claim before this Court, the Plaintiffs' do not argue that their ERISA claim would normally be subject to these provisions. Rather, they argue that their ERISA claim is exempt from the exhaustion requirement because the contractual procedures and remedies would be futile. (Plaintiffs' Easter Answer Brief at pp. 16–18).

In support of this argument, however, the Plaintiffs present nothing but the legal analysis showing that such an exception exists.

The Court is well aware of the legal standards governing the futility exception to the exhaustion requirement, including the requirement that the mere assertion that the futility exception applies without any evidentiary support for the contention does not allow the Court to find that the aggrieved party is entitled to invoke the exception. *Douglas v. American Information Technologies Corp.*, 877 F.2d 565, 574 (7th Cir.1989).

In the present matter, the Plaintiffs have presented nothing from which this Court or any fact-finder could conclude that following the dispute resolution procedures of the CBA would be futile. There is no evidence that any grievance regarding the Plaintiffs' ERISA plan benefits was ever filed, or that the Union refused to pursue any grievance presented by the Plaintiffs or any other employee. As a result, this Court cannot find that the futility exception excuses the Plaintiffs admitted failure to resort to the contractual dispute resolution clauses before bringing this claim before the Court.

The Plaintiffs' assertion that the Defendant Easter should be equitably estopped from asserting the failure to exhaust argument is equally without merit.

■■■ Although the doctrine of equitable estoppel may preclude the assertion that an employee has failed to exhaust contractual dispute resolution procedures, *Schultz v. Owens–Illinois, Inc.*, 696 F.2d 505, 512–13 (7th Cir.1982), the Plaintiffs have shown nothing which could lead any reasonable fact-finder to conclude that the doctrine should apply in this matter. Rather, like their argument regarding the futility exception, the Plaintiffs have merely stated the legal rules regarding the equitable estoppel doctrine, without alleging or presenting any evidence to support their assertion that the doctrine applies to the present dispute.

In short, the Plaintiffs have failed in their burden to present evidence that would allow a fact-finder to conclude that the general rule requiring the exhaustion of contractual griev-

ance and arbitration procedures should not apply to the present dispute.

After considering the foregoing, the Court hereby **GRANTS IN PART** the **Defendant Easter Enterprises, Inc.'s Motion to Dismiss and In the Alternative for Summary Judgment** and **GRANTS IN PART** the **Defendant's [Buehler Foods, Inc. d/b/a Buehler's Buy–Low] motion to Dismiss or in the Alternative, Motion for Summary Judgment** as to Count 3 of the Plaintiffs' Complaint.

### VIII. Supplemental Jurisdiction Over State Law Claims

Turning to the Plaintiffs' state law claims, the Court notes that the only remaining claim under which the Court has original jurisdiction is Count 4, which alleges an ADA claim by one Plaintiff.

As a result, the Court's supplemental jurisdiction over the Plaintiffs' state law claims is now in question. *See* 28 U.S.C. § 1367(c).

▮▮▮ Pursuant to 28 U.S.C. § 1367(a), this Court has possessed jurisdiction over the Plaintiffs' state law claims because they formed part of the same case or controversy as the Plaintiffs' claims over which the Court has original jurisdiction. Pursuant to subsection (c) of § 1367, however, the Court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims under which it has original jurisdiction." 28 U.S.C. § 1367. There is a presumption that the district court should relinquish jurisdiction over pendent claims where all claims under which the court has original jurisdiction are disposed of prior to trial. *Alonzi v. Budget Construction Co.*, 55 F.3d 331, 334 (7th Cir.1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993). The Court must also consider the interests of judicial economy and convenience in making this decision, *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir.1995), as well as the novelty and difficulty of the state law issues. *United States v. Zima*, 766 F.2d 1153, 1159 (7th Cir.1985).

▮▮▮ After considering these factors, the Court must decline to continue its exercise of supplemental jurisdiction over the Plaintiffs'

claims brought pursuant to the law of Indiana. This Order and Memorandum disposes of all claims over which this Court has original jurisdiction, except an ADA claim brought by an individual Plaintiff. As a result, the issues presented in the state law claims are no longer a part of the same case or controversy as the subject matter of the case now before the Court. The Plaintiff has given no reason why the Court should retain jurisdiction, and the Defendants have moved for a dismissal of the Plaintiffs' state law claims by reason of this Court's lack of original jurisdiction over the Plaintiffs' remaining claims. Furthermore, the Plaintiff's remaining state law claim presents complex issues of state law concerning state contract and tort law.

As a result, the Court hereby **DISMISSES** the Plaintiffs' claims for intentional interference with a contract of employment and intentional infliction of emotional distress presented in Counts 5 and 6 of the Complaint, respectively.

### IX. Conclusion

Because of the breadth of this decision, a brief summary of the disposition of the Plaintiffs' claims is warranted. First, summary judgment on Count 1 of the Complaint—which alleges ADEA claims by the older employees—is granted in favor of the Defendants. Second, summary judgment on Count 2 of the Complaint—which alleges ADEA claims by the younger employees—is granted in favor of the Defendants. Third, summary judgment on Count 3 of the Complaint—which alleges violations of ERISA—is granted in favor of the Defendants. Finally, Counts 5 and 6 of the Complaint—which allege Indiana state-law claims—are dismissed. As a result, the only claim which remains in this action is the ADA claim by Plaintiff Maurine Mattingly against the Defendant Buehler.

**IT IS SO ORDERED.**

### ORDER

This Matter is before the Court on the **Defendant Easter Enterprises, Inc.'s Motion to Dismiss and In the Alternative for**

Summary Judgment and Defendant Easter Enterprises, Inc.'s Brief in Support of Motion to Dismiss filed September 19, 1994. The Plaintiffs' Answer Brief in Response to Defendant Easter Enterprises, Inc.'s Motion to Dismiss and in the Alternative for Summary Judgment was filed January 9, 1995. The Plaintiffs' Supplemental Authorities to Plaintiffs' Answer Brief in Response to Defendant Easter Enterprises, Inc.'s Motion to Dismiss, and in the Alternative, for Summary Judgment was filed January 17, 1995. The Defendant Easter Enterprises, Inc.'s Reply Brief was filed February 24, 1995.

This Matter is also before the Court on the Defendant's [Buehler Foods, Inc. d/b/a Buehler's Buy–Low] Motion to Dismiss or in the Alternative, Motion for Summary Judgment and Buehler Foods' Brief in Support of Motion to Dismiss or in the Alternative, Motion for Summary Judgment filed January 30, 1995. The Plaintiffs' Response to Defendant's Motion to Dismiss and/or Motion for Summary Judgment, Answer Brief in Response to Defendant Buehler's Foods, Inc.'s Motion to Dismiss and in the Alternative for Summary Judgment and Material Facts in Dispute were filed June 8, 1995. In the Magistrate Judge's Order on Telephone Status Conference issued May 26, 1995, Magistrate Hussman ordered that the "Plaintiffs shall file any supplemental briefs in response to the Defendant's motion to Dismiss or in the Alternative, Motion for Summary Judgment filed by defendant Buehler Foods, Inc. d/b/a Buehler's Buy–Low, on January 31, 1995, by not later than fifteen (15) days after the receipt of the responses to the discovery served May 12, 1995." (Order of May 26, 1995 ¶ 1).

The Plaintiffs have not filed any supplemental briefs in this Matter.

After considering the foregoing, as well as the relevant case and statutory law, the Court hereby **GRANTS IN PART** the Defendant Easter Enterprises, Inc.'s Motion to Dismiss and In the Alternative for Summary Judgment, **GRANTS IN PART** the Defendant's [Buehler Foods, Inc. d/b/a Buehler's Buy–Low] Motion to Dismiss or

in the Alternative, Motion for Summary Judgment, and **DISMISSES** Counts 5 and 6 of the Plaintiffs' Complaint.

**IT IS SO ORDERED.**