Ronald ROBINSON, Plaintiff-Appellant,

v.

**PPG INDUSTRIES, INC.,**
Defendant-Appellee.

No. 92-3000.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1993.

Decided May 4, 1994.

---

James P. Baker (argued), Springfield, IL, for plaintiff-appellant.

Joshua G. Vincent, William J. Holloway (argued), Michael J. Leech, Hinshaw & Culbertson, Chicago, IL, Deborah L. Rose, Office of the Atty. Gen., Springfield, IL, Lynn M. Wagner, Hinshaw & Culbertson, Milwaukee, WI, for defendant-appellee.

Before CUMMINGS and ROVNER, Circuit Judges, and GRANT, District Judge.[*]

ILANA DIAMOND ROVNER, Circuit Judge.

After his discharge from PPG Industries, Inc. ("PPG"), Ronald Robinson brought suit under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c) ("ADEA"), alleging that he was discharged based on his age. The district court granted summary judgment in favor of PPG, concluding that Robinson had not identified evidence from which a finder of fact could reasonably conclude that PPG's proffered reasons for discharging him were pretextual. We reverse and remand for trial.

## I. FACTS

PPG manufactures glass, paints, coatings, chemicals and other products for sale to both residential and commercial consumers throughout the world. Its principal place of business is in Pennsylvania. Robinson commenced work for PPG in 1957. Beginning in 1965, he held a number of positions that involved the acquisition of the raw materials PPG required for the manufacture of its products. In 1980, Robinson was assigned to PPG's Kokomo, Indiana plant as the purchasing agent responsible for acquiring the materials needed for the architectural metals produced there. For a brief time in 1987, Robinson also assumed additional purchasing responsibilities for another PPG plant in Oakville, Ontario, which also manufactured architectural metals.

In 1987, PPG began to reorganize the channels through which it acquired materials for its thirty-two North American plants. Four regional purchasing centers were created to take over the acquisition responsibilities that previously had been performed by individual purchasing agents on behalf of individual plants. Ralph Siebach, PPG's Director of Facilities and Field Purchasing, supervised the reorganized glass purchasing group. Glenn Henrichsmeyer was appointed manager of the Western region, headquartered in Mount Zion, Illinois.

As a result of the reorganization, the position of purchasing agent for the Kokomo plant that Robinson had held was terminated. Rather than discharge Robinson at that time, PPG offered to transfer him to the regional headquarters in Mount Zion to take the place of Michael Linssen, who was on temporary assignment in Pittsburgh assisting with the installation of a computerized purchasing system using McCormick &

* The Honorable Robert A. Grant, of the Northern District of Indiana, sitting by designation.

Dodge software. Henrichsmeyer informed Robinson that he would occupy that position for approximately eighteen months or until Linssen's other assignment came to an end. Henrichsmeyer also advised Robinson that his continued employment after that time depended upon his performance and the availability of another position. Robinson accepted the offer in July of 1988. In his new position, Robinson continued to purchase materials for the manufacture of architectural metals at the Kokomo plant as he had before; in addition, he handled purchasing for several glass manufacturing facilities whenever an individual who normally handled those responsibilities was away. Each of the two annual evaluations Robinson received during his tenure at Mount Zion indicated that he met the requirements of his job. Moreover, although purchasing on behalf of glass facilities was outside Robinson's area of expertise, Henrichsmeyer never indicated to Robinson that his efforts in this area were in any way below par; on the contrary, Henrichsmeyer indicated in a 1990 evaluation that Robinson's ability to comprehend tasks beyond his specialty "exceed[ed] expectations." R. 30, Henrichsmeyer Aff. Ex. B.

Between 1988 and 1990, PPG shut down a number of its glass manufacturing plants in the Western Region, and further closures were expected. With that prospect in mind, Siebach and Henrichsmeyer prepared a forced ranking of all purchasing agents within the Western region. Buyers were ranked based on the following criteria:

(1) working relationship with the corporate purchasing department;

(2) plant purchasing experience;

(3) knowledge of the glass purchasing group;

(4) knowledge of and compliance with purchasing procedures;

(5) communication skills;

(6) ethical standards;

(7) systems literacy;

(8) interpersonal skills;

(9) negotiating skills;

(10) education;

(11) purchasing certification;

(12) work ethic;

(13) geography; and

(14) potential for promotion.

Robinson ranked last among the seven regional buyers evaluated. R. 30, Henrichsmeyer Aff. Ex. C.

In May 1990, Linssen (who had been rated second best in the forced ranking) completed his temporary assignment and returned to the Mount Zion facility. On May 15, 1990, PPG informed Robinson that Linssen would be reinstated to his previous position and that Robinson would be discharged. Over the following ten weeks, at PPG's direction, Robinson familiarized Linssen with the purchase of materials for the manufacture of architectural metals at the Kokomo plant, an area in which Linssen had no previous experience. Robinson's employment was terminated effective July 31, 1990. He was 59 years old at that time; Linssen was 39. In connection with his discharge, Robinson was granted an early retirement package as well as a supplementary severance package of approximately $36,000.

Robinson filed this lawsuit in 1991, alleging that PPG was motivated by his age in discharging him. Among the evidence on which Robinson relied to establish age discrimination were a number of statements Henrichsmeyer had allegedly made to him during the last six months of his employment, to the effect that PPG would no longer be retaining its employees until they reached the age of sixty-five.

The district court granted summary judgment in favor of PPG. At the outset, the court found (and PPG does not dispute) that Robinson had established a prima facie case of age discrimination: he was within the protected age group (between 40 and 70 years old), he had met the requirements of his job, he was discharged, and younger employees (e.g., Linssen) were treated more favorably than he. R. 38 at 3. The court went on to conclude, however, that PPG had rebutted Robinson's prima facie case by proffering legitimate reasons for his discharge: he was ranked far below Linssen in the 1990 forced ranking, he had little experience with glass purchasing or with use of the McCormick & Dodge software, and had been cited

in his 1989 and 1990 evaluations as needing improvement in both writing skills and use of the computer system. *Id.* at 4. Thus, the court moved on to consider whether Robinson had tendered evidence from which a factfinder could conclude that PPG's asserted reasons for discharging him were pretextual. The court focused on Robinson's allegation that PPG hired two younger men with less experience as regional buyers around the same time that he was discharged. *See id.* at 4-5. Although the record did confirm that PPG had hired two individuals (Bob Harlan and Mike Rodites) in or about the fall of 1988 who were both in their late thirties, the court found this circumstance insufficient to suggest that the company's reasons for discharging Robinson were pretextual. R. 45 at 2. The court noted that both were hired nearly two years before Robinson was terminated, and both were laid off within a year of Robinson's discharge due to plant closures. *Id.*[1] The court therefore granted summary judgment in favor of PPG.

## II. ANALYSIS

Because this case was disposed of on summary judgment, our review is de novo. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Monaco v. Fuddruckers, Inc.,* 1 F.3d 658, 660 (7th Cir.1993). Of course, we examine the factual record in a light most favorable to the plaintiff. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. As we noted recently:

> Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict.

*Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993) (citations omitted).

Our inquiry here is guided by the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which we have extended to age discrimination cases. *See Shager v. Upjohn Co.,* 913 F.2d 398, 400 (7th Cir.1990) (citing *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1219 (7th Cir.1980) (per curiam), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)); *see generally Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512 ("the inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits"). Within this framework (which applies when the plaintiff lacks direct evidence of age discrimination), it is the plaintiff's initial burden to tender evidence establishing a prima facie case of age discrimination. He must show that (1) he fell within the protected class of persons between the ages of 40 and 70; (2) he was meeting his employer's legitimate expectations; (3) he was discharged or demoted; and (4) that younger employees were treated more favorably. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992); *Shager,* 913 F.2d at 400-01; *Oxman v. WLS-TV,* 846 F.2d 448, 455 (7th Cir.1988) ("*Oxman III*"). As the district court found, Robinson satisfied this initial burden, raising an inference of discrimination that required PPG to come forward with evidence tending to show that it discharged Robinson for reasons other than his age. This PPG did: it pointed to the forced ranking that placed Robinson at the bottom of all regional buyers in terms of his performance and qualifications. *See Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 847-48 (7th Cir.1992) (per curiam); *Shager,* 913 F.2d at 401; *Oxman III,* 846 F.2d at 456. Consequently, the burden shifted back to Robinson to offer some evidence from which a finder of fact could conclude that the reasons PPG had given for discharging him were merely a pretext for age discrimination. *Shager,* 913

---

**1.** Harlan subsequently returned to PPG's employ, although the record is unclear as to when this occurred.

F.2d at 401; *Oxman III,* 846 F.2d at 456. Here is where our attention focuses.

█ We pause for a moment to clarify Robinson's burden of proof with respect to pretext. PPG has argued that because Robinson's discharge took place in the context of a reduction in force, he must offer not only evidence that the company's rationale for his discharge is inaccurate, but additional evidence suggesting that PPG was really motivated by his age—*i.e.,* "pretext plus." PPG Br. 15–20. The Sixth Circuit, among others, has adopted this requirement, *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 941 (6th Cir.1987); *see also Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 728 (8th Cir.) (collecting cases), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992), and in *Aungst v. Westinghouse Elec. Corp.,* 937 F.2d 1216, 1220–21 (7th Cir.1991), we appeared to embrace it as well. The district court followed suit. R. 45 at 1–2. Recently, however, we disavowed the "pretext plus" requirement that we flirted with in *Aungst.*

> The additional burden *Aungst* imposes on reduction-in-force plaintiffs undermines a central purpose of the *McDonnell Douglas* approach—"to relieve plaintiff of the burden of having to uncover what is difficult to uncover—evidence of discriminatory intent." *Oxman III,* 846 F.2d at 454–55. The *McDonnell Douglas* approach allows victims of discrimination to prevail without presenting any evidence of discrimination.... By requiring plaintiffs to produce affirmative evidence of discriminatory intent, *Aungst* runs afoul of the carefully crafted *McDonnell Douglas* scheme. Despite *Aungst*'s assertions to the contrary, plaintiffs in reduction-in-force cases bear no greater burden of proof than other ADEA plaintiffs.

*Oxman v. WLS–TV,* 12 F.3d 652, 657 (7th Cir.1993) (*"Oxman IV"*). *See also Williams,* 964 F.2d at 728; *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122–24 (7th Cir. 1994). Robinson may therefore satisfy the pretext prong of the *McDonnell Douglas* analysis by offering evidence "either that a discriminatory reason more likely motivated the employer *or* that the employer's proffered explanation is unworthy of credence."

*La Montagne v. American Convenience Prod., Inc.,* 750 F.2d 1405, 1409 (7th Cir. 1984) (emphasis supplied); *Oxman III,* 846 F.2d at 453.

Robinson relies on two types of evidence to establish pretext. Robinson points first to the fact that in the two years prior to his termination, several buyers over the age of 50 purportedly were either fired or forced to retire, while the younger Bob Harlan and Mike Rodites were hired during this same time period. Robinson also suggests that the criteria that Henrichsmeyer and Siebach selected for use in the unfavorable forced ranking unfairly exaggerated his weaknesses and minimized his strengths. Second, as more explicit evidence that PPG acted with discriminatory animus, Robinson cites Henrichsmeyer's alleged statements in the months preceding his discharge that it would be the company's policy not to retain employees until they reached the age of sixty-five.

█ We agree with the district court that first category of evidence on which Robinson has relied to establish pretext is insufficient. Although Robinson emphasizes that "[b]y July 30, 1990, all regional buyers from the Western Region that had been separated from the employ of the COMPANY other than those separated for documented poor performance were over the age of fifty" (Robinson Br. 32), the record reveals that other than himself, all of these "separated" individuals retired. Truly voluntary retirements do not give rise to an inference of age discrimination. *See Gustovich,* 972 F.2d at 850; *Henn v. National Geographic Soc'y,* 819 F.2d 824, 828 (7th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). Robinson does assert that one buyer, Bobb Coffman, was "forced" to retire. Robinson Br. 31–32. There is some support in the record for this assertion. Note the following ambiguous exchange from Henrichsmeyer's deposition:

Q Had [Coffman] announced that he was going to retire before there was any announcement that the Lincoln and Marshall plants were going to close?

      \*     \*     \*     \*     \*     \*

A No. He didn't indicate. This was our—this was PPG's decision, not Bob[b]'s decision. He indicated a desire to retire and we accommodated him.

Q Okay. The decision that Bob[b] would retire upon the closure of the Marshall and Lincoln plants was PPG's decision, not Bob[b]'s?

A That's correct.

Q And prior to that time he expressed an interest in retiring?

A That's correct.

R. 42, Henrichsmeyer Dep. 28–29. This testimony could be read to suggest that although Coffman may have expressed an interest in retiring, in the end he was not asked whether he was ready to leave. Whether Coffman's age played a role in the company's decision is another matter. In any event, it is difficult to discern from one retirement that may have been involuntary to some extent a pattern that would imply age was a motivating factor in Robinson's discharge. It is similarly difficult to draw an inference of age discrimination from the employment of Harlan and Rodites. Although it is perhaps noteworthy that neither had any experience in purchasing when they were hired, the fact that they were discharged within a relatively short time of Robinson's own departure tends to dispel the inference that age was a determining factor in the company's decision regarding whom to keep on and whom to let go.

■ PPG's reliance on the forced ranking does not hint of age discrimination either. Robinson makes two points in this regard. First, he notes that a number of the criteria employed were unfair, in the sense that they highlighted skills or experience that he had not had the opportunity to acquire and overlooked his particular strengths. For example, because the Kokomo plant had not yet begun to use the company's McCormick & Dodge purchasing software as of the date of the evaluation, he had no familiarity with that system; and because the company had never before encouraged its buyers to seek certification, Robinson (like many other employees), had not attained it. At the same time, although Robinson had unique experience in the acquisition of materials for the manufacture of architectural materials, the ranking did not take that into consideration. In any event, Robinson suggests, the forced ranking is suspect as a justification for his discharge, given that the company had really made the decision to discharge him in 1987 or 1988, when his post at the Kokomo plant was terminated and he was temporarily assigned to the Mount Zion facility to fill in for Linssen. Both arguments miss the mark. That the forced ranking may have resulted in a mistaken assessment of Robinson's value to PPG does not, in and of itself, signal cognizable discrimination by the company. Misguided and unfair personnel assessments are not actionable under the ADEA unless age played a role in the evaluation. *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 156–57 (7th Cir.1994); *McCoy*, 957 F.2d at 373; *Gustovich*, 972 F.2d at 848; *Shager*, 913 F.2d at 401. It is true that evaluations based on such subjective criteria as "interpersonal skills" and "potential for promotion" are more susceptible to a showing of pretext. *Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 427–28 (7th Cir.1992). But absent some evidence suggesting that PPG's management created, conducted, or used the forced ranking as a cover-up for decisions that were really based on age, the inequities of which Robinson complains do not by themselves supply proof of pretext. Nor does the fact that PPG may have made a preliminary decision to discharge Robinson two years before the forced ranking hint of discrimination. By all accounts, the company had not foreclosed the possibility that it might keep Robinson on at the conclusion of his temporary assignment to Mount Zion if a position were available and his performance were sufficiently strong. *See* R. 30, Siebach Aff. ¶ 14; Henrichsmeyer Aff. ¶¶ 19–20 & Ex. A; *cf.* R. 37, Robinson Aff. ¶ 5. Thus, the fact that the company decided to conduct a ranking of the buyers still on staff in 1990 and to include Robinson in that ranking again does not, without more, give rise to an inference that the company was merely seeking a cover for age discrimination.

■ Henrichsmeyer's purported remarks about the company not keeping employees on

until they reached sixty-five are another matter, however. The district court did not expressly address the import of these alleged statements, although Robinson relied on them as evidence of pretext. *See* R. 37, Robinson Summary Judgment Mem. 21.[2] According to Robinson, Henrichsmeyer had made such a remark at least once in January or February of 1990, and on two or three subsequent occasions after he was informed that he would be discharged. The last time Robinson recalled Henrichsmeyer making the statement was on his final day of work, as the two were leaving the lunchroom together. R. 37, Robinson Dep. 86. A factfinder might infer from these kinds of statements that PPG was motivated by age in its termination decisions.[3] That is not the only inference, of course—Henrichsmeyer might simply have meant that the company would not hesitate to discharge any employee who did not meet its expectations, even if he or she were approaching retirement. But this is for the finder of fact to sort out.

At the same time, we cannot definitively state based on the limited record before us that Henrichsmeyer's alleged statements were merely stray remarks that had nothing to do with his termination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1804–05, 104 L.Ed.2d 268 (1989);

*Shager,* 913 F.2d at 402. Henrichsmeyer was not only Robinson's immediate supervisor at the Mount Zion facility (R. 37, Robinson Aff. ¶ 6), but he, along with Siebach, had prepared the forced ranking and decided to terminate Robinson. *See* R. 30, Siebach Aff. ¶¶ 24–32, Henrichsmeyer Aff. ¶¶ 29–52. *Contrast* such cases as *Oxman IV,* 12 F.3d at 659–60; *Monaco,* 1 F.3d at 660, 662; *Aungst,* 937 F.2d at 1221; *La Montagne,* 750 F.2d at 1412. Moreover, the breadth of the statements Robinson has attributed to Henrichsmeyer permits the inference that an underlying desire not to retain employees until they reached retirement age had something to do with the decision to discharge Robinson. As Robinson has recounted the remarks, they were not casual asides that merely reflected a consciousness of his age. *See Shager,* 913 F.2d at 402. Instead, they could be construed as interpretations of a corporate goal to boot employees out before they retired. Indeed, although the record does not tell us much about the context of these purported remarks, Robinson indicated that one of them was made during a review of employee rankings, R. 37, Robinson Dep. 87, a circumstance which might suggest that age played at least some role in the company's assessment of its workers, including Robinson. Again, it is for a finder of fact to

**2.** Indeed, as direct evidence of a discriminatory animus, Henrichsmeyer's alleged statements really remove the case from the burden-shifting framework of *McDonnell Douglas,* which is meant to address cases where such proof is lacking. *See Shager,* 913 F.2d at 402.

**3.** *Cf. Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449–50 (8th Cir.1993) (corporate planning documents emphasizing as one of the company's strengths the fact that "[t]op and middle managers are mostly young, well educated and results oriented" constituted evidence of a discriminatory attitude on part of corporate officer who authored the documents; same individual's comments to plaintiff that company was "young, mean and lean," that plaintiff might want to consider retiring, and that plaintiff should have seen his discharge coming when company hired a twenty-six year old individual were also evidence that age may have played a role in plaintiff's discharge); *Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1377–78 (5th Cir. 1992) (local president's remark that he and regional vice-president were going to "retire the older employees" and regional vice-president's statement that he considered plaintiff to be "less energetic" and "less motivated" than other em-

ployees supported jury's finding of pretext); *Elliott v. Montgomery Ward & Co.,* 967 F.2d 1258, 1262, 1263 (8th Cir.1992) (manager's statement to plaintiff that "the company was growing so rapidly that she would not be able to keep up with how fast the company was growing" sufficient to raise an inference that age may have played role in her discharge despite inferior evaluations she received); *Shager,* 913 F.2d at 402–03 (supervisor's remarks that "[t]hese older people don't much like or much care for us baby boomers, but there isn't much they can do about it" and "the old guys really know how to get around things" combined with other evidence to raise inference that age may have played a role in plaintiff's discharge); *Buckley v. Hospital Corp. of America,* 758 F.2d 1525, 1530 (11th Cir.1985) (administrator's remark that he was surprised at longevity of hospital's staff, that hospital needed "new blood," that he intended to hire younger doctors and nurses, and that plaintiff's "advanced age" of 62 may have been causing her stress presented jury question as to whether defendants acted with discriminatory intent).

decide whether Henrichsmeyer truly did make such observations and, if so, whether they had anything to do with the decision to discharge Robinson. Constrained as we are at this stage of the proceedings to grant Robinson the benefit of every reasonable inference, we believe that a factfinder could infer from this evidence that age played a role in his discharge.

## III. CONCLUSION

Because a dispute of material fact remains as to whether age may have been a motivating factor in Robinson's discharge, we RE-VERSE the district court's grant of summary judgment in PPG's favor and REMAND for trial.