**Donna CAGLE, Plaintiff,**

v.

**K–FIVE CONSTRUCTION COMPANY, Defendant.**

No. 95 C 3768.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 12, 1997.

**1268**

Ayesha Salima Hakeem, Chicago, IL, for Donna Cagle.

Michael H. Cramer, Connelly, Sheehan & Moran, Chicago, IL, for K–Five Const. Co.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Donna Cagle ("Cagle") has filed a two-count amended complaint against defendant K–Five Construction Company ("K–Five") alleging that: (1) defendant discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, by refusing to permit plaintiff to return to work with certain medical restrictions after her time off for a work-related injury (Count I); and that (2) defendant violated the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq* (the "Act") by discharging plaintiff in retaliation for filing a workers' compensation claim (Count II).

On January 31, 1996, defendant filed its first motion for summary judgment on both counts pursuant to Fed.R.Civ.P. 56. On August 2, 1996, the court granted defendant's motion with respect to Count II and denied defendant's motion with respect to Count I. On December 6, 1996, defendant filed a renewed motion for summary judgment based on new evidence and a motion for summary judgment based on the scope of the charge filed by plaintiff with the E.E.O.C. On plaintiff's request, the court extended the due date for plaintiff's response to January 13, 1997. On January 17, 1997, plaintiff filed a motion for extension of time without a notice of motion. On January 22, 1997, without having presented her motion for extension to the court, plaintiff filed her response and supporting papers to defendant's motions for summary judgment as well as her own cross-motion for summary judgment.

On January 29, 1997, defendant filed the instant motion in opposition to plaintiff's motion for extension of time and motion to strike plaintiff's response, cross-motion for summary judgment, and accompanying documents. For the reasons set forth below, defendant's motion to strike and in opposition to plaintiff's motion for extension of time is granted. Moreover, even considering all of the briefs submitted, the court finds that there is no genuine issue of material fact as to whether defendant's decision not to accommodate plaintiff was based on her sex and that, accordingly, defendant is entitled to judgment as a matter of law.

### Facts [1]

Defendant is a construction company that repairs, builds, and rebuilds roads. Plaintiff began working for defendant as a truck driver in October 1987. Her job duties consisted primarily of driving a truck back and forth between the place where the truck is loaded with dirt to the "dump yard" where plaintiff dumps the dirt.

In October 1990, plaintiff asked for time off work to see a doctor for back, arm and leg pain, which she claimed was caused by driving a truck over a period of days. Plaintiff's doctor recommended "home rest and ice til further notice." Plaintiff was off work for 152 days and filed a workers' compensation claim based on this injury. Plaintiff did not return to work for six months. On April 15, 1991, plaintiff's doctor released her for work with the restriction that she operate a truck equipped with both an "air-ride cab" and an "air-ride seat." [2]

Robert Krug ("Krug"), defendant's secretary who is responsible for overseeing the company's trucking operations, and Peter Paganelis ("Paganelis"), one of defendant's trucking superintendents, are charged with the job of determining when an injured driver may return to work. Plaintiff was permitted to return to work on May 9, 1991, with the restrictions prescribed by her doctor.

---

1. The facts are taken from the parties' Local Rule 12(M) and 12(N) statements with respect to defendant's original and renewed motion for summary judgment.

2. An air-ride seat is essentially an inflated seat cushion which may reduce, but not eliminate, the shock to a truck driver's body from driving over rough terrain. An air-ride cab uses the same principle to cushion a truck's cab and may also help reduce discomfort from driving over rough terrain.

Paganelis assigned plaintiff a truck designed to accommodate her injury in May 1991. At that time, neither Paganelis nor Krug informed plaintiff that there would be any problem in the future with accommodating her with air-ride cab and air-ride seat restrictions.

On May 31, 1991, an asphalt loader accidentally dropped a large asphalt chunk on the top of plaintiff's truck cab, injuring plaintiff's neck. As a result, plaintiff left work on medical leave. On September 11, 1991, plaintiff's husband, James Cagle, a former mechanic for defendant, provided Paganelis and Martin Skoglund's ("Skoglund")[3] secretary with a medical release from plaintiff's physician containing the following restrictions:

> No heavy lifting over 25 pounds, until further notice. Patient to drive a truck with air-ride cab with air-ride seat.

Later in same day, James Cagle met Skoglund and asked him if he had received plaintiff's medical release. Skoglund informed Cagle that he had, and that plaintiff was to be scheduled to work the next day.

When plaintiff reported to work on September 16, Paganelis informed plaintiff that she could not return to work with the 25-pound restriction. Thereafter, plaintiff contacted her doctor and told him that lifting 25 pounds was not part of her job, whereupon Dr. Kawanaga issued plaintiff a second release without that restriction. Plaintiff provided Skoglund with the second release on September 16, 1991, which permitted plaintiff to work as of September 17, 1991, with the following restrictions:

> Patient to use Air–Ride Seat with an Air–Ride Cab. To be reevaluated in approximately one month.

Skoglund did not indicate any problem with the restriction and told plaintiff that he would schedule her to work the next day. Thereafter, Paganelis and Krug discussed these restrictions and determined that defendant would not accept plaintiff back to work with these restrictions. Later that day, Skoglund called plaintiff and told her that she could not return to work with the remaining medical restrictions.

Plaintiff never presented defendant with a release without the "air-ride cab and air-ride seat" restrictions, and was not allowed to return to work after her conversation with Skoglund on September 16, 1991. Defendant maintains that it neither fired plaintiff nor refused to return her to work under different circumstances. Defendant contends that it considered plaintiff to be an employee on medical leave, and maintained her place on its seniority list until 1992, when it learned that plaintiff had accepted employment as a truck driver with another company.

### Discussion

#### I. *Motion to Strike*

■ Where a party requests an extension of time after a filing deadline has passed, the court may grant the extension only where the failure to act was the result of excusable neglect. Fed.R.Civ.P. 6(b)(2). Excusable neglect has been interpreted as the missing of deadline because of such things as "misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules." *Prizevoits v. Indiana Bell Telephone Co.,* 76 F.3d 132, 134 (7th Cir.1996). Put another way, "excusable neglect ... [means] that [a court] will grant relief [to the party missing a deadline] only where the actions leading to the default were not willful, careless, or negligent." *Johnson v. Gudmundsson,* 35 F.3d 1104, 1107 (7th Cir.1994) (citations omitted).

In the instant case, defendant filed its renewed motion for summary judgment and motion for summary judgment based on scope of charge on December 6, 1996. On December 17, the court ordered plaintiff to respond to those motions by December 30, 1996, and defendant to reply by January 10, 1997. On December 19, 1996, in open court, plaintiff's counsel requested an extension of time in which to file her response because she was going to be in London on December 30th, 1996. Plaintiff's counsel indicated, nonetheless, that, if it were necessary, she would be able to have "someone else ... review [the pleading] and have it filed." The

---

**3.** Skoglund is another of defendant's trucking superintendents.

court granted plaintiff's request, resetting the briefing schedule as follows: plaintiff's response and cross-motion for summary judgment due on January 13, 1997; defendant's reply/response due January 27, 1997; ruling date of March 13, 1997.

On January 13, 1997, plaintiff failed to file her responsive pleadings. On January 17, 1997, plaintiff filed a motion for extension of time, without a notice of presentment date, requesting until January 22, 1997 to file her cross motion for summary judgment and responses to defendant's motions for summary judgment. As reasons for the extension, plaintiff's counsel pleaded: (1) she had been out of the country until January 13, 1997; (2) since her return to the U.S., she had been ill.

On January 22, 1997, without leave of court, plaintiff filed the following documents: (1) plaintiff's cross-motion for summary judgment; (2) plaintiff's memorandum of law in support of her cross-motion for summary judgment; (3) plaintiff's Rule 12(M)(3) statement of material facts in support of her cross-motion for summary judgment; (4) plaintiff's memorandum of law in opposition to defendant's renewed motion for summary judgment; (5) plaintiff's 12(N)(3)(a) response to defendant's 12(M)(3) statement supporting defendant's renewed motion for summary judgment; (6) plaintiff's 12(N)(3)(b) statement of additional facts which require the denial of defendant's renewed motion for summary judgment; (7) plaintiff's 12(N)(3)(b) statement of additional facts which require the denial of defendant's motion for summary judgment based on scope; (8) exhibits to the aforementioned pleadings.

On January 28, 1997, defendant filed the instant motion to strike and in opposition to plaintiff's motion for extension of time. On February 3, 1997, plaintiff filed her response to this motion, accompanied by a copy of her memorandum of law in opposition to defendant's motion for summary judgment based on scope and her 12(N)(3)(a) response to defendant's 12(M)(3) statement in support of its motion for summary judgment based on scope—neither of which were filed with the required leave of court.

Defendant argues that there is no "excusable neglect" for plaintiff's failure to respond on time to its motions for summary judgment. The fact that plaintiff's counsel may have caused the delay in filing is no excuse. *See Pioneer Investment Services v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 397, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993). Further, defendant maintains that it has been prejudiced by plaintiff's delay, but that, in any event, a showing of prejudice or harm is unnecessary for the neglect to be inexcusable under Rule 6(b)(2). *Prizevoits,* 76 F.3d at 134 ("The word 'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm.").

Plaintiff's counsel argues that plaintiff's motion for extension of time in which to file a response to defendant's summary judgment motions, filed four days after the responsive pleadings were due (January 17), should be granted because her counsel returned from her European excursion on the date the response was due (January 13). Plaintiff's counsel also contends that, despite being ill and suffering from jet lag, she worked vigorously to finish the pleading on time. Unfortunately, her efforts were unsuccessful. Allegedly, her illness continued; she was unable to file her motion for extension of time until January 17, and her pleadings until January 22. Finally, in answer to defendant's objection that plaintiff's 12(n)(3)(a) statement and memorandum of law in response to defendant's motion for scope were not even filed on January 22, plaintiff and her counsel respond: "We are simply puzzled by this."

This court, however, is puzzled as to why plaintiff's counsel has been unable to follow the routine filing deadlines set during the course of this litigation. On December 19, 1996, in open court, the court, on plaintiff's request, extended the filing date for plaintiff's response to January 13, 1997. At this time, plaintiff's counsel knew that she would be in Europe during the beginning of January, but assured the court that she would be able to meet the January 13th deadline.

It should be noted that this case is littered with delays, missed deadlines, and requests for extensions of time by plaintiff and her

counsel. The date for filing plaintiff's response to defendant's original motion for summary judgment was extended three times at plaintiff's request. The second such deadline was missed, resulting in an "emergency" motion by plaintiff for leave to file instanter, which motion was granted by the court conditioned on the payment to defendant of $350 in attorney's fees for the time required to respond to the "emergency" motion. Plaintiff's latest defalcations must be viewed in this context of irresponsibility.

The court now regrets to find itself in the position of a disappointed schoolmaster, whose warnings and disciplinary measures have been unsuccessful. It is too late for a doctor's note, another extension, or an extra credit project. Based on the aforementioned facts, the court finds that there is no excusable neglect for plaintiff's failure to meet the filing deadline of January 13, 1997. *See Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 997 (7th Cir.1996) (district court did not abuse discretion in denying plaintiff's fourth request for extension of time to respond to defendant's summary judgment motion where reasons plaintiff's lawyer offered were more like routine office problems than something that could not have been anticipated).

Accordingly, defendant's motion to strike plaintiff's responsive pleadings to defendant's motions for summary judgment and plaintiff's cross-motion for summary judgment is granted, and plaintiff's motion for extension of time is denied.

## II. SUMMARY JUDGMENT

### A. *Standard*

Under Fed.R.Civ.P. 56(c), a court should grant a summary judgment motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993).

The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of mate-

rial fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### B. *Sex Discrimination under Title VII*

In Count I of her amended complaint, plaintiff alleges sex discrimination under Title VII. Plaintiff contends that defendant refused to permit her to return to work after she suffered a work-related injury which resulted in medical restrictions being imposed by her physician on the work she could do, but that defendant allowed a similarly situated male truck driver to return to work subsequent to an injury resulting in similar physician's restrictions.

In its opinion dated August 2, 1996, the court denied defendant's first motion for summary judgment on Count I. Specifically, the court found that plaintiff had established her prima facie case with two pieces of circumstantial evidence: (1) testimony that the number of females employed by defendant has dropped since the current managerial staff has been in place; and, (2) a affidavit of plaintiff's husband, James Cagle, a former mechanic for defendant, that, in the summer of 1990, he installed a new air-ride seat into James Spears' ("Spears") truck, which already had an air-ride cab, to accommodate Spears' back injury.

Additionally, the court held that plaintiff had created a genuine issue of material fact on the issue of pretext because: (1) defendant allowed plaintiff to return to work in April 1991 with the identical medical restrictions for which defendant later denied her request to return; (2) when Paganelis spoke to plaintiff on September 16, 1991, he told her that she could not come back with the 25-pound restriction, but did not mention a problem with the air-ride seat and air-ride cab restrictions; and, (3) before they made their decision to deny plaintiff's medical re-

lease, neither Krug nor Paganelis investigated the number of defendant's trucks that had both air-ride cabs and air-ride seats, nor did they examine the statistics on how often the air-ride cabs and air-ride seats break down and how long it would take to repair them.

Defendant, on its renewed motion for summary judgment, states that it has new evidence to dispel the evidence previously identified by the court as supporting plaintiff's prima facie case and as creating genuine issues of fact on the issue of pretext. Because the court has stricken plaintiff's pleadings that were filed on January 22, 1997, it need not consider them in ruling on defendant's renewed motion for summary judgment. Yet, even considering all the pleadings before it,[4] the court finds that defendant is entitled to summary judgment as a matter of law.

### 1. Plaintiff's *Prima Facie* case

■ To prevail under the indirect, burden-shifting method of proof for Title VII cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), plaintiff must establish a *prima facie* case of discrimination. To do so, plaintiff must show that: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) defendant treated similarly-situated employees outside her classification more favorably. *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994), citing, *McDonnell Douglas Corp.*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. If plaintiff succeeds in establishing a *prima facie* case, a rebuttable presumption of discrimination is created, and the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for its employment decision.

If defendant is successful, the presumption of discrimination dissolves, and the burden shifts back to plaintiff to show that defendant's proffered reasons are a pretext for sex discrimination. *See, Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122

(7th Cir.1994). Plaintiff can satisfy the pretext burden by showing "either that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence." *Robinson v. PPG Industries*, 23 F.3d 1159, 1163 (7th Cir.1994).

In the instant case, defendant concedes that plaintiff has satisfied the first three elements of her *prima facie* case, but argues that, in light of the information uncovered during discovery, there is no evidence to support plaintiff's claim that similarly situated male employees were treated more favorably than plaintiff. To refute plaintiff's statistical evidence that the number of female truck drivers has declined since Paganelis and Skoglund became managers, defendant offers evidence that in September, 1989, just prior to when Paganelis and Skoglund were in charge of hiring, defendant employed 10 women as trucks drivers. By May 1991, the number of women drivers increased to 11. Plaintiff, nevertheless, emphasizes that defendant currently employs only five women truck drivers. This general hiring statistic, however, is not sufficient to establish plaintiff's individual sex discrimination claim based on defendant's failure to accommodate her. *See Sample v. Aldi*, 61 F.3d 544, 550 (7th Cir.1995) (statistical evidence failed to assist the plaintiff's individual disparate treatment claim where the plaintiff did not show any link between alleged discrimination represented by statistics and employment decision being challenged).

Defendant also provides testimony on the hiring practices of Paganelis and Skoglund with respect to women. Significantly, Paganelis and Skoglund have offered a job to every female applicant with experience as a semi-dump truck driver who applied while they were accepting applications (except one who allegedly applied while intoxicated) Further, they have accepted female applications when they were not accepting most male applications. Finally, both the men and women who have left employment with de-

---

4. Because the court's conclusion is based on defendant's new evidence, which demonstrates that plaintiff has failed to provide evidence of a prima facie case or pretext, it will not discuss the merits of defendant's motion for summary judgment based on scope.

fendant have left for a variety of reasons, many of which were voluntary.

With respect to the affidavit of plaintiff's husband, James Cagle ("Mr.Cagle"), that he had "personal knowledge" that he installed an air-ride seat in Spear's truck to "accommodate" Spear's back injury in 1990, defendant submits Mr. Cagle's allegedly contradictory deposition testimony. In his deposition, Mr. Cagle testified that the statement in his affidavit concerning the accommodation of Spear's back injury [5] was based entirely on two hearsay statements by Spears and Rich Dietschweiler ("Dietschweiler"), the mechanic shop superintendent.[6] Mr. Cagle admits that he has no personal knowledge of whether and to what extent defendant's management knew of Mr. Spears' medical problem.

Plaintiff responds with: (1) Mr. Spears' affidavit, in which Mr. Spears testified that he told Paganelis and Skoglund about his back problem and that defendant accommodated him in August 1990 with an air ride seat, and (2) a letter from an independent insurance adjuster to defendant's insurer, stating that Mr. Spears had trouble with the bench seat in this truck in the summer of 1990, that he complained to his superiors about it, and that the seat was replaced by the shop superintendent. The court notes, however, that the conclusions by the independent insurance adjuster are based on Mr. Spears' statements and a documented belief that Mr. Spears was telling a "believable version" of the relevant facts. The insurance adjuster admits that its staff "was unable to meet personally with Mr. Spears ... [so that they could] not comment on his appearance and credibility as a witness." Moreover, after defendant denied plaintiff's request for accommodation with an air-ride seat and air-ride cab in 1991, it denied similar accommodation requests by Spears and another similarly situated male in 1992. Additionally, the court views the fact that defendant permitted certain male employees with medical problems different than plaintiff's to work modified hours as irrelevant to plaintiff's prima facie case; such male employees are not "similarly situated" to plaintiff. *See Troupe v. May Department Stores Co.,* 20 F.3d 734, 738 (7th Cir.1994) (in pregnancy discrimination case where the defendant argued that it fired the plaintiff because of tardiness, court

---

**5.** Paragraph 15 of Mr. Cagle's affidavit states:

In the summer of 1990, I assisted in installing a new air ride seat in Truck No. 4168, to accommodate another driver, John Spears. Truck 4168 already had an air ride cab. Spears needed an accommodation because he had injured his back previously.

**6.** The following are excerpts from Mr. Cagle's deposition:

Q: Where did you get your information that Mr. Spears needed an accommodation because he injured his back previously?
A: Rich came out of the office and told me he was complaining. He said, "I can't afford to do this for every damn body, so just get in there, and get it done."
Q: So Rich told you that Spears was complaining about his seat?
A: Yes.

\* \* \* \* \* \*

Q: [Y]ou represent in your affidavit that Mr. Spears needed an accommodation because he had injured his back previously, and I want to know what information you have to support that statement.
A: Rich and Mr. Spears, talking to them.

\* \* \* \* \* \*

Q: Did ... Rich say anything else that led you to believe that Spears needed an accommodation because of a back injury?

A: Other than that he was complaining, I really don't remember anything.

\* \* \* \* \* \*

Q: And I think you testified previously that it was this conversation with Mr. Spears and the statement that you say Rich Dietschweiler made about Spears' complaining, those are the things that you were relying on when you said Spears needed an accommodation because he had injured his back previously?
A: Yes.
Q: Is there any other information that you have to support that statement?
A: No.
Q: You never saw a medical release or a doctor's note concerning John Spears, is that correct?
A: Correct.
Q: And you don't have any information that Spears ever gave a medical release or doctor's note to K–Five in 1990, do you?
A: Correct.
Q: And you don't have any knowledge of what document Spears did or did not give to K–Five, do you?
A: No. I have no knowledge.
Q: And you have no knowledge of what Mr. Spears told K–Five management, do you?
A: I have no personal knowledge.

noted that hypothetical "similarly situated" non-pregnant employee was one who was "as tardy as [the plaintiff] was, also because of health problems, and who [was] about to take a protracted sick leave growing out of those problems at an expense to [the defendant] equal to that of [the plaintiff's] maternity leave.").

Accordingly, the court finds that, in light of the evidence presented by both parties,[7] plaintiff cannot establish a prima facie case because she has failed to demonstrate that defendant treated similarly situated males differently than plaintiff.

## 2. Evidence of Pretext

■ Defendants allege that, even if plaintiff has established a prima facie case, its decision not to allow plaintiff to return to work was based on plaintiff's medical restriction, and that plaintiff has failed to demonstrate that defendant's explanation is a pretext for gender discrimination. Specifically, defendant argues that, in light of its new evidence, the three facts cited by the court in its opinion of August 2, 1996, as creating a genuine issue of fact on pretext are no longer sufficient. First, defendant argues that the fact that it allowed plaintiff to work in May 1991 under a medical release requesting an air-ride cab and air-ride seat does not demonstrate pretext because May 1991 was the first time that anyone had made such a request, and the company later reassessed the situation and decided not to accommodate such restrictions. Second, the fact that defendant, in reassessing the situation, did not

analyze statistics or empirical evidence is not indicative of pretext. *See Kralman v. Ill. Dept. of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir.1994) (noting that issue of pretext addresses whether employer gives honest explanation of its decision, not whether employer is mistaken in its judgment). Defendant simply assessed the situation and decided that guaranteeing trucks equipped with both air-ride seats and air-ride cabs would be logistically difficult, expensive, and risky. Finally, the fact that, when Paganelis spoke with plaintiff on September 16, 1991, he stated only that defendant would not accommodate the 25–pound restriction and did not make reference to the air-ride seat/cab restriction, is insufficient on its own to defeat summary judgment. This court agrees.

A plaintiff may prove pretext by: (1) "showing that a discriminatory reason more likely than not motivated the employer;" or (2) "that the employer's proffered explanation is unworthy of credence." *Kralman,* 23 F.3d at 156. Plaintiff has offered little to rebut defendant's evidence. Plaintiff's most significant point is that Paganelis did not inform plaintiff of defendant's new policy of not accommodating drivers with medical problems similar to plaintiff's when it spoke to her in September 1991, even though the policy had allegedly been created in June or July 1991. The court emphasizes that plaintiff's complaint alleges discrimination on the basis of gender, not discrimination relating to any sort of disability. Defendant maintains that it decided not to allow plaintiff to return

---

7. In her cross-motion for summary judgment, plaintiff argues that her prima facie case is buttressed by evidence that defendant used its policy on unauthorized stops to harass women. Specifically, plaintiff contends that Skoglund and Paganelis interpreted the policy to mean that a driver could not stop to use the bathroom without getting permission from a supervisor. Plaintiff contends that this rule had an adverse impact on women because women could not (or rather, would not) urinate outside of a bathroom facility. Plaintiff also contends that Skoglund followed women drivers to the bathrooms on work sites (portable toilets), waited for them to come out of the bathroom, and then complained that the women took too long in the bathroom.

The courts finds this evidence both unpersuasive and irrelevant to plaintiff's prima facie case. First, plaintiff admits in her deposition that she

never saw Skoglund wait for women outside of the portable toilets, but that she knew of his practice to do so only from the hearsay statements of her colleagues. Second, plaintiff's complaint alleges that defendant discriminated against her on the basis of her sex by refusing to accommodate her with an air ride and air cab seat. Evidence of defendant's practice of requiring unauthorized stops does not relate to the challenged conduct or to a demonstration that defendant treated similarly situated males (i.e. males requiring accommodations similar to plaintiff) differently. See *Sample v. Aldi,* 61 F.3d 544, 552 (7th Cir.1995) (statistical evidence offered by the plaintiff to prove his individual case of discrimination did not assist his case because he could not show link between alleged discrimination and employment decision he was challenging).

to work because of her medical restriction. Without more evidence than that presented by plaintiff, a trier of fact could not infer that defendant's explanation is not credible or is a pretext for gender discrimination.

Accordingly, the court finds that plaintiff has failed to create a genuine issue of material fact precluding summary judgment. Defendant's renewed motion for summary judgment is granted.

### CONCLUSION

For the reasons set forth above, the court grants defendant's motion to strike and denies plaintiff's motion for extension of time. In addition, the court grants defendant's renewed motion for summary judgment based on new evidence.