Richard DILL, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, PHILADELPHIA COUNTY ASSISTANCE OFFICE, et al., Defendants.

No. CIV. A. 97–3850.

United States District Court, E.D. Pennsylvania.

May 22, 1998.

Marshall L. Williams, Philadelphia, PA, for Plaintiff.

Claudia M. Tesoro, Office of Attorney General, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

KATZ, District Judge.

*Factual Background*

Plaintiff Richard Dill is an African American male who was employed by the Commonwealth of Pennsylvania Department of Public Welfare (DPW) Philadelphia County Assistance Office (PCAO) from September, 1976 until he resigned in November, 1984. By letter dated October 19, 1995, plaintiff applied for reinstatement as an Income Maintenance Caseworker. His application was denied, and the reason given was plaintiff's poor performance and attendance records during his prior DPW employment. Plaintiff asserts that these reasons were pretextual, and the actual reasons for the denial of his reinstatement were his race and/or retaliation for his having engaged in protected activities, and he here sues DPW and James Mulvaney, the PCAO Director of Personnel Services at the time of Dill's denial.

Reinstatement is a procedure whereby former employees may be rehired in an expeditious manner. It is not automatically granted to former employees who request it; the agency has discretion in the reinstatement decision. In deciding whether to offer reinstatement to a particular employee, the PCAO weighs several factors: the individual's record of performance, attendance, and discipline as a PCAO employee in the past; any intervening employment history; and information supplied by references. To gather this information, each reinstatement applica-

tion received is assigned to an employee in the Recruitment and Placement Unit of the Personnel Services section. The assigned Personnel employee retrieves the applicant's personnel file from the PCAO archives, gets an updated personal and employment history from the applicant, and does a reference check with PCAO staff, prior supervisors, and other employers. After collecting all the pertinent information, the Personnel staff member analyzes it and makes a recommendation to the Personnel Director, who has the final word on all PCAO reinstatement applications. (Ex. A, Declaration of Edward Pelc, ¶¶ 6–8).

Dill's reinstatement application was handled in accordance with the regular procedure. When the PCAO received Mr. Dill's letter on October 23, 1995, Mr. Mulvaney directed the letter to Sherrin Bryant, the Chief of Recruitment and Placement. Ms. Bryant assigned plaintiff's request to Monica Rios, a personnel Analyst, for review and recommendation. After obtaining and assessing the relevant materials, Ms. Rios and Ms. Bryant recommended that plaintiff's application for reinstatement be denied. (Ex. B, Declaration of James L. Mulvaney, ¶¶ 3–5, 7–8; Ex. B Att. 2, Recommendation and Report by Bryant).

The recommendation recounted Mr. Dill's performance evaluation history, which was basically good, and listed these additional facts to consider: "When Mr. Dill was [with] our agency during the period of 1976–1984, he received a written reprimand for unexcused absence on 4/84 and request for job abandonment action on 11/14/84. Mr. Dill did not report to work for 5 days (11/1/84, 11/7/84, 11/8/84, 11/13/84, 11/14/84). Mr. Dill volunta[rily] resigned on 11/15/84 as IMCW [with] Phila CAO. Also, Mr. Dill has excessive [sick leave] usage for 1994 and when he was [with] our agency—1984." The recommendation further contained this statement: "Mr. Pelc does remember Mr. Dill and he stated that he was a trouble maker and he received a lot of complaints in relating to his unexcused absences and Mr. Pelc did not recommend to transfer Mr. Dill to our dept. Based on all information and experience, [sick leave] usage and PER (even though this

references are good), do not recommend transfer." (Ex. B. Att 2).

When Mr. Mulvaney received this recommendation, he concurred with it based on the information presented to him. A letter dated November 28, 1995 was sent by Mr. Mulvaney informing Mr. Dill that his application for reinstatement was denied. As reasons for the denial, the letter cited plaintiff's unfavorable leave and attendance record; his 1993 performance evaluation (which he received while working for another Commonwealth agency) that indicated the quality of his work needed improvement, although he met standards overall; and the problems he had during his prior employment, including infractions for unexcused absences and the threatened job abandonment action. (Ex. A Att. 2). Plaintiff responded in a letter dated December 7, 1995, in which he said that he "totally disagree[d] with every and all reasons given" for the denial, and in which he requested reconsideration of his application for reinstatement. (Ex. A Att. 3). In a letter dated December 21, 1995, Mr. Mulvaney informed Mr. Dill that the decision to deny reinstatement remained. (Ex. A Att. 4).

The PCAO has approximately 2,200 employees. Statistically, that work force consists of the following:

| | |
|---|---|
| African American males | 10.34% |
| White males | 11.68% |
| Hispanic males | 2.16% |
| Other males | 1.20% |
| African American females | 58.11% |
| White females | 10.80% |
| Hispanic females | 5.15% |
| Other females | .55% |

(Ex. A ¶ 21).

The PCAO hires Income Maintenance Caseworkers, the position for which Mr. Dill applied, on an ongoing basis. During 1995 and 1996, the office received 36 requests for reinstatement to that position. One individual withdrew the request before any action was taken. Of the remaining 35 applications, 10 were granted and 25 were denied. Of the 10 individuals offered reinstatement, there were two African American males, four African American females, one white male, two white females, and one Hispanic female. Of the 25 applications denied, there were seven

African American males, six African American females, four white males, two white females, two Hispanic males, one Hispanic female, and three females of unknown race. (Ex. A ¶ 19).

After plaintiff's denial of reinstatement on November 28, 1995, the first Income Maintenance Caseworker position filled was on December 4, 1995. The person hired at that time was an African American female. (Ex. A ¶ 20).

Defendants filed a motion to dismiss, and the court granted that motion in part. Defendants here move for summary judgment on the remaining claims: a Title VII claim against DPW, and § 1981, § 1983, PHRA, and PERA claims against defendant Mulvaney individually.

*Discussion*

*Summary Judgment Standard*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *See id.* at 256, 106 S.Ct. 2505. "This standard is applied with added rigor in employment discrimination case, where intent and credibility are crucial issues." *Stewart v. Rutgers, State Univ.,* 120 F.3d 426, 431 (3d Cir.1997), *quoting Robinson v. PPG Indus. Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994).

The moving party has the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster General Hosp.,* 87 F.3d 624, 639 (3d Cir.1996). In

response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989).

*Title VII*

In a Title VII disparate treatment case, the court analyzes the evidence according to a special scheme consisting of the three steps set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997). The plaintiff must first make out a prima facie case by showing the following elements: (1) the plaintiff belongs to a protected class; (2) the plaintiff applied for and was qualified for a position for which the employer was seeking applicants; (3) the plaintiff was not selected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the job. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. On the facts of the present case, the last element is better phrased as requiring proof that "nonmembers of the protected class were treated more favorably" in the consideration of their reinstatement applications. *Stewart v. Rutgers, State Univ.*, 120 F.3d 426, 432 (3d Cir.1997) (stating that as the standard in a denial of tenure case).

If plaintiff offers sufficient proof of these elements, step two is reached. The burden of production shifts to the defendant employer to offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the challenged action. *See Hicks*, 509 U.S. at 506–07, 113 S.Ct. 2742; *Keller*, 130 F.3d at 1108.

If the defendant satisfies its burden of production, step three shifts the burden back to the plaintiff.

The plaintiff may then survive summary judgment ... by submitting evidence from which a factfinder could reasonable either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Keller*, 130 F.3d at 1108, *quoting Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994) (internal quote omitted); *see also Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1067 (3d Cir.1996) (en banc), *cert. denied*, —— U.S. ——, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997). The ultimate burden of persuading the fact finder that the defendant intentionally discriminated against the plaintiff remains, at all times, on the plaintiff, *see Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742, and to survive a motion for summary judgment, "the plaintiff must produce 'sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons'" for the action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir.1997), *quoting Sheridan*, 100 F.3d at 1067.

■ Here, the plaintiff cannot make out a prima facie case. Based on the employment and reinstatement approval statistics provided by the PCAO, and in particular the fact that the first Income Maintenance Caseworker hired after Mr. Dill's application was denied was African American, he cannot show that African Americans were treated less favorably than non-protected groups in being offered reinstatement.

■ Even if plaintiff does make a prima facie showing, DPW has articulated a legitimate reason for its denial of his reinstatement application: in accordance with the PCAO's normal procedures, information about Mr. Dill's employment history was gathered and evaluated. That information revealed that Mr. Dill's past attendance record was not good, both in that he had several unexcused absences, to the point of a job abandonment action being considered, and in that he had a history of using his sick leave in a way that DPW considered dubious. This reason is enough to satisfy DPW's burden of production. In response, plaintiff offers nothing but his own belief that DPW's actual reason in denying his application for reinstatement was racial prejudice. That is not

**592**

enough to create a triable factual issue as to whether DPW discriminated against him.[1]

### § 1981 and § 1983 Claims

"To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated." *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir.1992) (internal quote and cite omitted). When a § 1983 or § 1981 claim is brought on the basis of alleged employment discrimination, it is analyzed according to the same *McDonnell Douglas* framework as is applied in Title VII cases. *See Stewart v. Rutgers, State Univ.*, 120 F.3d 426, 432 (3d Cir.1997). Therefore, the analysis above applies equally to these claims against defendant Mulvaney, and again plaintiff does not and cannot raise a genuine issue of material fact.

### State Law Claims

After the dismissal of the federal claims as discussed above, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims under the PHRA and the PERA against defendant Mulvaney. Accordingly, those claims are dismissed as well.

---

1. Plaintiff originally made a claim of Title VII for retaliation, and the court dismissed that claim because it was based on his engaging in activity not protected by Title VII. Plaintiff repleaded a retaliation claim in his Second Amended Complaint, and now argues that he has demonstrated a triable issue of fact on it because he has "demonstrated that he had previously filed a charge of discrimination against the defendant." This apparently refers to the allegation made in plaintiff's Second Amended Complaint that he "filed on his own behalf an internal complaint and grievance protesting disparate treatment based upon his race and sex in violation of the 1964 Civil Rights Act concerning the use of sick leave and a proposed constructive discharge in August 1984." ¶ 14. Apart from the allegation in the complaint and plaintiff's unsupported argument in his memorandum of law, plaintiff offers no evidence that he ever did file such a complaint, much less that defendants' failure to reinstate him was motivated by an intent to retaliate for that alleged complaint. In defending a summary judgment motion, the non-moving party cannot simply reassert factually unsupported allegations contained in its pleadings. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989). As described above, the report prepared in support of the recommendation not to reinstate Mr. Dill contained this statement: "Mr. Pelc does remember Mr. Dill and he stated that he was a trouble maker and he received a lot of complaints in relating to his unexcused absences and Mr. Pelc did not recommend to transfer Mr.

Dill to our dept." This is not enough to create a triable issue of fact on a retaliation claim.

Plaintiff raises two other arguments that the court will dispose of readily. First, plaintiff argues that the affidavits in support of defendants' motion are unsworn and not notarized and therefore cannot be considered by the court in deciding the summary judgment motion. *See Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Hemmons*, 774 F.Supp. 346, 350 (E.D.Pa.1991). Because the declarations of Edward Pelc and James Mulvaney attached to defendants' motion comply with the requirements of 28 U.S.C. § 1746, they are in an admissible form. *See* 28 U.S.C. § 1746 (providing that wherever a sworn affidavit is required, a writing declared under penalty of perjury is given like force and effect).

Next, plaintiff argues that the court ought not rule on this summary judgment motion, because plaintiff requires discovery to respond to it. In the more than eleven months since the complaint in this case was filed, ample time has been provided for discovery, and defendant has not been deprived of any opportunity to conduct whatever discovery necessary. As the plaintiff filed his response to the summary judgment motion one day before the case was scheduled for a dispositive arbitration hearing, the court cannot take seriously plaintiff's contention that this is a "pre-discovery" summary judgment motion.